ILLINOIS SURETY CO. v. UNITED STATES, to Use of PEELER, et al.

(Circuit Court of Appeals, Fourth Circuit. May 6, 1914.)

No. 1242.

1. UNITED STATES (§ 67*)—PUBLIC IMPROVEMENTS—CONTRACTOR'S BOND—ACTIONS—COMMENCEMENT—"FINAL SETTLEMENT."

Act Aug. 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901, p. 2523), as amended by Act Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1911, p. 1071), provides that, if no suit is brought by the United States within six months from the completion of a public improvement under a contract with the United States and final settlement of such contract, then the person or persons supplying the contractor with labor and materials may sue on the contractor's bond after the expiration of such six months' period and within a year from the complete performance of the contract and final settlement thereof. Held that, where a supervising architect reported the completion of a contract to the secretary of the treasury under date August 21, 1913, and on August 26th a voucher issued for the balance due was approved by the contractor, the approval of such voucher constituted the "final settlement" of the contract within the statute, and the six months' period began to run from that date and not from the date of the execution of a check for the balance due in payment of the voucher.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*

For other definitions, see Words and Phrases, vol. 3, p. 2804.]

2. STATUTES (§ 219*)—CONSTRUCTION—ADMINISTRATIVE OFFICERS.

Construction given to a federal statute by officers charged with its administration will be upheld by the courts, in the absence of convincing reason to the contrary found in a language or purpose of the enactment.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 296, 297; Dec. Dig. § 219.*]

3. LIMITATION OF ACTIONS (§ 127*)—COMPLAINT—AMENDMENT.

Where plaintiffs sued on a federal contractor's bond within the time specified by Act Aug. 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

p. 2523), as amended by Act Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S Comp. St. Supp. 1911, p. 1071), but by inadvertence or mistake plaintiffs failed to allege in terms that there had been a completion of the contract and final settlement between· the government and the contractor, and when the contract was completed and final settlement had, or that such completion and final settlement occurred more than six months and within a year before the date of the commencement of the suit, the court was authorized by Rev. St. § 954 (U. S. Comp. St. 1901, p. 696), relating to amendments, to permit plaintiffs to amend by alleging such facts which in fact existed.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 543–547; Dec. Dig. § 127.*]

4. APPEAL AND ERROR (§ 1034*)—METHOD OF SUIT—WAIVER OF JURY.
Where a jury was waived in the action tried by the court, it was immaterial that it was tried on the law instead of the equity calendar.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4063–4068; Dec. Dig. § 1034.*]

5. INTEREST (§ 39*)—RIGHT TO INTEREST—UNLIQUIDATED DEMAND.
Where amounts due respective subcontractors had not been ascertained and determined until the trial of an action on a federal contractor's bond, interest was properly allowed only from the date of the order awarding judgment.

[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 83–89; Dec. Dig. § 39.*]

Cross-Writs of Error to the District Court of the United States for the Eastern District of South Carolina, at Columbia; Henry A. Middleton Smith, Judge.

Action by the United States, to the use of J. A. Peeler and others, trading as the Faith Granite Company, and others, against the Illinois Surety Company. Judgment for plaintiff for less than the relief demanded, and both parties bring error. Affirmed.

Writ of error allowed to Supreme Court, 215 Fed. 1007.

W. H. Townsend, of Columbia, S. C., for plaintiff in error and cross-defendant in error.

Benjamin E. Pierce, of Augusta, Ga., and D. W. Robinson, of Columbia, S. C. (J. L. Rendleman, of Salisbury, N. C., Pierce Bros., of Augusta, Ga., and Croft & Croft, of Aiken, S. C., on the brief), for defendants in error and cross-plaintiffs in error.

Before KNAPP and WOODS, Circuit Judges. and DAYTON. District Judge.

KNAPP, Circuit Judge. This suit was commenced on March 4, 1913, under the act of Congress of August 13, 1894, as amended February 24, 1905, which gives to subcontractors under certain conditions a right of action upon the bond of a contractor for the erection of a public building. For convenient reference the material parts of this statute are reproduced in the margin.[1]

[1] "If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the department under the direction of which said work has been prosecuted that labor or materials for the

The defendant contractor and his surety, the plaintiff in error, filed separate answers to the complaint on April 4, 1913. Notice was published as provided by the act, and two other subcontractors intervened, one on April 26th and the other on June 27, 1913. On the 22d of September, 1913, the defendants filed notices of motion, in the nature of a demurrer, to dismiss the complaint, and also the petitions of intervention, on specified grounds which were in effect that neither the complaint nor the petitions stated a cause of action. It was also alleged that the court had no jurisdiction because the right of action is equitable in its nature and the issues cannot be determined in a suit at law. Upon the hearing of these motions the plaintiffs and interveners asked for and received leave to amend. Amended pleas were thereupon filed, to which answers were duly interposed by the defendants. The contractor set up a special defense, which was sustained, that he had been adjudicated a bankrupt and received his discharge. The case was tried by the District Judge; all parties having stipulated in writing to waive a trial by jury and resulted in a judgment against the plaintiff in error and in favor of the several subcontractors mentioned, both plaintiffs and interveners. To reverse this judgment the surety company prosecutes this writ of error. The cross-writ alleges error because interest was allowed only from the date of the order directing the judgment.

[1] Apart from some minor issues which will be later considered, the two principal contentions are: First, that the action was prematurely brought and must fail for that reason; and, second, that the trial court erred in allowing the complaint and petitions to be amended. If the first of these contentions is well founded, the case is at an end, as the Supreme Court has recently held in United States v. McCord et al., 233 U. S. 157, 34 Sup. Ct. 550, 58 L. Ed. 893, decided April 6, 1914. The point was directly involved, and the decision unequivocal. Among other things, the court says:

"By this statute a right of action upon the bond is created in favor of certain creditors of the contractor. The cause of action did not exist before, and is the creature of the statute. The act does not place a limitation upon a cause of action theretofore existing, but creates a new one upon the terms named in the statute. The right of action given to creditors is specifically

prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are hereby, authorized to bring suit in the name of the United States in the Circuit Court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution: Provided, that where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later: And provided further, that where suit is so instituted by a creditor or creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later."

conditioned upon the fact that no suit shall be brought by the United States within the six months named, for it is only in that event that the creditors shall have a right of action and may bring a suit in the manner provided. The statute thus creates a new liability and gives a special remedy for it, and upon well-settled principles the limitations upon such liability become a part of the right conferred, and compliance with them is made essential to the assertion and benefit of the liability itself. * * * The right to intervene is given in the statute when the action is brought by the United States, and the creditors may have their rights adjudicated in such action. And in the case of an action begun by a creditor in accordance with the statute, the right to file a claim is given to creditors. These rights to intervene and to file a claim, conferred by the statute, presuppose an action duly brought under its terms. In this case the cause of action had not accrued to the creditors who undertook to bring the suit originally. The intervention could not cure this vice in the original suit. * * * No service was made or attempted to be had upon it, as required by the statute when original actions are begun by creditors. As we read the certificate, the intervention was what it purported to be—an appearance in the original suit, already brought, and in our view must abide the fate of that suit."

In the case at bar the facts relating to the commencement of the action are these: The work required of the contractor appears to have been practically completed some time in June, 1912. The supervising architect so reported in a communication to the secretary of the treasury, under date of August 21, 1913, which contains "a condensed statement of the account," including contract price, additions, and deductions made from time to time, payments on account, and charges of actual damages for delay, and recommends that authority be given "for the issue and payment of a voucher" in favor of the contractor for $3,399.01, the balance found due to him. On the same date this statement and recommendation were approved by the assistant secretary of the treasury. Under date of August 23, the contractor was notified of the amount so stated and determined to be due him, and that authority had been given for a voucher in his favor for the ascertained balance, and he acknowledged the same two days later by letter to the supervising architect. The voucher was issued on August 26th, and he signed his approval thereof on or about that date. The check in payment was drawn on the 11th of September, and paid on the following day. This check, as will be seen, was issued and paid less than six months before the suit was commenced, and if that be the date of the "completion and final settlement" of the contract, within the meaning of the statute, the action was prematurely brought and cannot be maintained.

But we are clearly of opinion that the final settlement in this case was effected on or before the 26th of August, when the contractor signed the voucher which bears that date, and in which he certified "that the above bill is correct and just and that payment therefor has not been received." Surely, nothing then remained to be settled. Indeed, there is no indication in the record that anything had been in dispute between the contractor and the government. There was no disagreement as to the additions to the work for which he was entitled to additional pay, or as to deductions for items not furnished. Under the penalty clause of the contract, the government had the right to make a further and large deduction for delay in completing the

work, and the contractor was of course aware .that this could be done.
The government, however, was satisfied to charge against this ac-
cumulated penalty only such actual expenses as had been occasioned
by the delay, and the contractor was presumably well satisfied with
what was done in that regard. At any rate, he accepted the basis of
settlement proposed without question or demur, and promptly signed
the voucher which stated the account in detail on that basis, and con-
tained a certificate that the bill was just and correct. The contract
had been performed, the work accepted, the balance ascertained, which
the government admitted he was entitled to receive, and he assented
unreservedly to the settlement which the government offered. If there
can be a settlement of a contractor's claim without payment of the
balance due him, which we do not at all doubt, there was a complete
and final settlement of the contract.in question. The circumstance that
something over two weeks elapsed before a check was made out for
the balance agreed upon does not in the least alter the fact that the
settlement was complete when the contractor signed and returned the
voucher. In our opinion the learned District Judge was entirely cor-
rect in his conclusion that this suit was not brought until more than
six months after the final settlement of the contract.

This accords with the construction of the statute by the treasury
department, as appears from a regulation which reads as follows:

"The· department treats as the date of final settlement mentioned in said
acts the date on which the department approves the basis of settlement un-
der such contract recommended by the supervising architect, and orders pay-
ment accordingly."

[2] .It is familiar doctrine that the construction given to a statute
by officials charged with its administration will be upheld by the
courts unless convincing reason to the contrary is found in the lan-
guage or purpose of the enactment. New Haven R. R. Co. v. Inter-
state Commerce Commission, 200 U. S. 361, 401, 26 Sup. Ct. 272,
50 L. Ed. 515.

We have discovered only two cases under this statute which bear
directly upon the point here considered, and both of them give sup-
port to the views above expressed. United States v. Winkler (C. C.)
162 Fed. 397; United States v. Bailey (D. C.) 207 Fed. 782. In the
latter case, District Judge Bourquin, after reciting the steps taken in
the adjustment and settlement of contractors' accounts, uses the fol-
lowing language:

"When this is done, and not until then, in respect to government contracts
performed, there is final settlement thereof, though further time be neces-
sary for mere ministerial acts, to issue and deliver warrants. In no other
wise can there be final settlement of. contract obligations of the United States,
and this is the final settlement contemplated by the Act February 24, 1905,
aforesaid. And, from the date of said auditor's settlement and certificate
forthwith as the evidence thereof, the limited time within which actions like
unto this must be commenced begins to run."

[3] The other contention above mentioned alleges error in the al-
lowance of amendments to the pleadings after the expiration of a
year from the date of the final settlement of the contractor's account.
The original complaint did not allege in terms that there had been

a completion of the contract and final settlement thereof between the government and the contractor; nor did it allege when the contract was completed and final settlement had; nor that such completion and final settlement occurred more than six months, and within a year, before the date of the commencement of the suit. Similar omissions or defects appear in the original petitions of intervention.

We are unable to see any substantial reason why the discretionary power of the court to allow amendments could not be exercised because the time within which the suit could be begun had then elapsed. The suit was in fact commenced, as we hold, more than six months and less than a year after the final settlement referred to in the statute. At that time a complete cause of action under the act existed in favor of the plaintiffs. By some mistake or inadvertence they failed, as we will assume, to set forth in their complaint all the facts necessary to establish their cause of action, although the omitted facts actually existed. Why should they be deprived of the benefits conferred by this statute, when their action was seasonably brought and the facts entitled them to recover, merely because through some mischance certain of those facts were omitted from their complaint? Why should not the court permit the omissions to be supplied, and upon what sustainable theory can it be said that the court was powerless to grant relief after the time limited for commencing the action had expired? The amended complaint sets up no new cause of action, and alleges no facts which were not in existence when the suit was begun; it merely supplies omissions and corrects defects in the original complaint. If the suit had been prematurely brought, or brought too late, the court would have been without jurisdiction, because under those circumstances the plaintiffs would not be within the conditions of the statute, and therefore could not avail themselves of its provisions; and no amendment would be of value in that case because there would be nothing to amend, as the Supreme Court says in the recent case above cited. But this suit was commenced within the period allowed by the act, and the right of recovery depends upon the state of facts which existed at that time. It is elementary that an amendment dates back to the beginning of the suit and is designed to cure defects in the statement of the cause of action then existing, and there is abundant precedent for permitting amendments of that character and for that purpose, to the end that errors or mistakes of pleading may not result in a miscarriage of justice. In our judgment the amendments in question were properly allowed under the provisions of sections 954 of the Revised Statutes and the authority of M.. K. & T. Ry. v. Wulf, 226 U. S. 576, 33 Sup. Ct. 135, 57 L. Ed. 355.

[4] The remaining assignments of error do not go to the merits of the controversy and need but a word of mention. Whether the action authorized by the statute in question is an action at law or in equity seems to us of no practical importance in this case, and therefore requires no discussion, because both parties duly waived a trial by jury and thereby in effect requested the court to try the case without a jury. Under those circumstances, no reversible error was com-

mitted, even if it be assumed that the cause should have been placed on the equity calendar and not on the law calendar.

We agree with the trial court that the incorporation of the Carolina Electric Company and the Electrical Engineering & Contracting Company was sufficiently proved by the certificates received in evidence. There was no dispute as to the fact or amount of the contractor's indebtedness to the former company, and the obligation of the plaintiff in error to pay the same was properly established. The direction to pay the sum found due "to such person as may be authorized by law to receive it" gives adequate protection to the plaintiff in error and appears to be a suitable disposition of the case in that regard.

[5] We are also of opinion that the learned District Judge was right in allowing interest only from the date of the order awarding judgment, because the amounts due the respective subcontractors were not ascertained and determined until the trial of the action.

For the reasons thus briefly stated, the judgment is affirmed.