UNITED STATES, for Use of JOHN DAVIS CO. et al. v. ILLINOIS SURETY CO. et al.

ILLINOIS SURETY CO. v. UNITED STATES, for Use of JOHN DAVIS CO. et al.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1915. On Petition for Rehearing, etc., August 6, 1915.)

Nos. 2092, 2093.

1. UNITED STATES ☞67—PUBLIC WORKS—CONTRACTOR'S BOND—ASSIGNMENT —LIABILITY.

Act Aug. 13, 1894, c. 280, 28 Stat. 278, as amended by Act Feb. 24, 1905, c. 778, 33 Stat. 811 (Comp. St. 1913, § 6923), requires a contractor to give a surety bond for the performance of the contract and his payment of all persons supplying him with labor or material, and gives laborers and materialmen a right of action on the bond in the name of the United States, if no suit is brought by the government within six months from completion and final settlement. A contractor for government work, providing for a reservation of 5 per cent. for one year to secure repairs, gave a bond, dated August 3, 1908, and after his indebtedness for work done under the contract, on January 3, 1909, assigned his contract to a company which he had organized, without the government's assent or the surety's knowledge, and thereafter received payment from the government and turned it over to the company. *Held* that, while the statute does not protect one who by agreement or assignment endeavors to put himself in place of a contractor by assuming his obligations or financing the work, the bond is a substitute for the ordinary mechanics' liens of laborers and materialmen, whether their contractual relations are with the contractor or a subcontractor, and that the claimants, supplying labor or material to the assignee with or without knowledge of the assignment, were protected by the bond, unless they had waived or were estopped from asserting their rights.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. ☞67.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. PRINCIPAL AND SURETY ☞102—PUBLIC WORKS—CONTRACTOR'S BOND—
CHANGE IN CONTRACT—RELEASE OF SURETY.

A contractor's surety bond, given under Act Aug. 13, 1894, c. 280, as amended by Act Feb. 24, 1905, for the performance of the contract and the protection of persons furnishing labor or material, is equivalent to a bond to the government and to a bond to each claimant, and a materialman's assent to the contractor's assignment, evidenced by accepting payment from the assignee on account of the entire claim and by filing such claim against the assignee's estate in bankruptcy, did not make such a material change in the obligation as would release the surety from liability to him.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 181–185; Dec. Dig. ☞102.]

3. NOVATION ☞7—CONTRACTOR'S BOND—ASSENT TO ASSIGNMENT.

In such case, a claimant's assent to the contractor's assignment and to the assignee's assumption of his obligations would not amount to a "novation."

[Ed. Note.—For other cases, see Novation, Cent. Dig. § 7; Dec. Dig. ☞7.

For other definitions, see Words and Phrases, First and Second Series, Novation.]

4. UNITED STATES ☞71—PUBLIC WORKS—CONTRACTOR'S BOND—CHANGE IN PRINCIPAL.

In a suit by laborers and materialmen upon a government contractor's bond, a finding that a claimant had consented to and aided the substitution of a new prinicpal, and that the contractor's assignment forced a new principal into the contract, was erroneous, since without the government's consent no new principal could be forced into the contract.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 54; Dec. Dig. ☞71.]

5. UNITED STATES ☞67—PUBLIC WORKS—CHANGE IN PRINCIPAL—LIABILITY —ESTOPPEL.

Where a government contractor's creation of a corporation and his assignment of the contract to it brought fresh capital into the work and delayed its failure, so as not to damage the surety, neither the claimant aiding such assignment, nor any creditor of the contractor, was estopped from asserting his rights under the surety bond.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. ☞67.]

6. UNITED STATES ☞67—CONTRACTOR'S BOND—LIABILITY—ELECTION OF REMEDY.

That, under a government contractor's bond, the contractor and the surety are liable for labor and material, does not limit the personal liability of the contractor or his assignee for goods bought, or for the assumption of any such debt, and the creditors could beside proceedings on the bond, file their claims against the estates in bankruptcy of the contractor and his assignee.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. ☞67.]

7. PLEADING ☞194—SPECIAL PLEAS—DEMURRER.

Where all defenses in an action on a government contractor's surety bond were properly allowed to be made under the three pleas, there was no error in sustaining the demurrers to the special pleas other than plea of discharge in bankruptcy of original contractor.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 444–446, 449–452; Dec. Dig. ☞194.]

8. UNITED STATES ☞67—PUBLIC WORKS—CONTRACTOR'S BONDS—ACTION— "SETTLEMENT THEREOF."

Under Act Aug. 13, 1894, c. 280, as amended by Act Feb. 24, 1905, giving laborers and materialmen a right of action on the contractor's bond in

the name of the United States, if no suit should be brought by the United States within six months from the completion and settlement of the contract, provided that such suit shall not be commenced until after the performance of the contract and final settlement thereof, the term "settlement thereof" does not mean payment, and when there was a final accounting between the contractor and the government, the contract was finally settled, even though part of the balance due was to be withheld for a year as security for the contractor's covenant to repair.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. ☞67.]

9. UNITED STATES ☞67—PUBLIC WORKS—CONTRACTOR'S BOND—INTEREST.

Where the principal of claims of laborers and materialmen was in excess of the penalty in the contractor's surety bond, with the interest thereon, it was immaterial whether interest at 5 per cent. was allowed on each claim, though, as the amount of such claims was liquidated, interest was properly allowed from the commencement of the suit.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. ☞67.]

10. PRINCIPAL AND SURETY ☞73—BREACH—LIABILITY—INTEREST.

The principal of a surety bond is not the measure of liability thereon. The surety's failure to discharge its obligation after demand or suit subjects it to the payment of interest, which, under Hurd's Rev. St. Ill. 1897, c. 71, § 2, is at the rate of 5 per cent. per annum.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 114, 115, 455; Dec. Dig. ☞73.]

11. UNITED STATES ☞67—PUBLIC CONTRACT—LIABILITY ON BOND—EQUIPMENT.

Under Act Aug. 13, 1894, c. 280, as amended by Act Feb. 24, 1905, giving laborers and materialmen a right of action on the contractor's bond for labor and material furnished "in the prosecution of the work provided for in such contract," the claim of an equipment company, which had contracted with the contractor for the use of cars and equipment, for the rental and for return freight paid by it, was allowable.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. ☞67.]

12. BANKRUPTCY ☞421—DISCHARGE—CLAIMS—"FIXED LIABILITY EVIDENCED BY AN INSTRUMENT IN WRITING, ABSOLUTELY OWING."

Under Bankr. Act July 1, 1898, c. 541, § 63, subsec. 1, 30 Stat. 562 (Comp. St. 1913, § 9647), allowing proof of debts which are a fixed liability, as evidenced by judgment, or an instrument in writing absolutely owing at the time of the filing of the petition, the claim of laborers and materialmen against the bankrupt, the condition of whose surety bond for government work was breached before his bankruptcy, was a "fixed liability evidenced by an instrument in writing, absolutely owing," and the fact that a claimant might eventually obtain no share in a judgment for the penalty of the bond, or only a pro rata allowance of his claim, did not affect the absolute character of the liability, and hence the contractor's discharge in bankruptcy was a good defense.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 772–774, 776, 777, 779–781, 783–786, 788–790; Dec. Dig. ☞421.

For other definitions, see Words and Phrases, Second Series, Fixed Liability.]

On Petition for Rehearing and on Motion to Modify Opinion and for Entry of Final Judgment.

13. COURTS ☞424—UNITED STATES COURTS—JURISDICTION—EQUITY.

The District Court had jurisdiction of a suit at common law under a government contractor's bond, filed under the provisions of Act Aug. 13,

1894, c. 280, as amended by Act Feb. 24, 1905, to enforce payment of claims for labor and material furnished the contractor; and, in view of Act March 3, 1915, c. 90, 38 Stat. 956, adding Judicial Code, § 274a, allowing pleadings in suit at law which should have been brought in equity to be amended to conform to the proper practice, there would be no difference between the proper judgment at law and a decree in equity, and where the case was tried by the court without a jury, and its findings of fact were not attacked, it was of no practical importance whether a court of law or equity was the proper forum.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1119, 1125–1129; Dec. Dig. ☞424.]

14. APPEAL AND ERROR ☞184—OBJECTION NOT MADE BELOW.
Where a court of law was not clearly without jurisdiction of a suit at common law to enforce claims under a government contractor's bond, an objection, first urged on appeal, that the subject-matter was cognizable only in equity, was too late.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1149, 1150, 1179–1183; Dec. Dig. ☞184.]

15. COURTS ☞406—UNITED STATES COURTS—APPEAL—MODIFICATION OF JUDGMENT.
Under Rev. St. § 701 (Comp. St. 1913, § 1669), vesting the Circuit Court of Appeals with power to modify, as well as to affirm or reverse, a judgment of the District Court, the appellate court, on appeal in a case tried without a jury, where the findings of fact in the lower court were undisputed, after reversing, might render the proper judgment.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1103; Dec. Dig. ☞406; Appeal and Error, Cent. Dig. § 3387.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois; A. L. Sanborn, Judge.

Action by the United States of America, for the use of the John Davis Company and others, against the Illinois Surety Company and W. H. Schott. Judgment for a part of the claimants against the Surety Company, and in favor of the Surety Company against part of the claimants, and judgment for defendant Schott, and part of the claimants and the Surety Company bring error. Reversed and remanded, with direction to enter the judgment entered in the Circuit Court of Appeals.

Wm. D. McKenzie, of Chicago, Ill., for John Davis Co. and others. Newton Wyeth, of Chicago, Ill., for Standard Underground Cable Co. and others.

Worth Allen, of Chicago, Ill., for Western Roofing & Supply Co.

David J. Peffers and Albert J. Hopkins, both of Chicago, Ill., for Illinois Surety Co.

Before BAKER, SEAMAN, and MACK, Circuit Judges.

MACK, Circuit Judge. On July 30, 1908, William H. Schott entered into a contract with the United States for a certain part of the work involved in the erection of the naval training station at North Chicago. He gave bond, dated August 3, 1908, with the Illinois Surety Company as surety, in the penal sum of $31,047.18, conditioned in accordance with the provisions of "An act for the protection of persons furnishing materials and labor for the construction of public

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

works" as amended February 24, 1905 (33 Stat. 811, c. 778 [Comp St. 1913, § 6923]), both on his performance of the contract and the prompt payment by him "to all persons supplying him labor and materials in the prosecution of the work provided for in the aforesaid contract."

Prior to January 2, 1909, much work was done under the contract, for which considerable sums were owing by Schott. On that day, under the advice of a creditors' committee, which had been assisting him even before July 30, 1908, Schott transferred his entire business to a newly formed corporation, the Schott Engineering Company, which assumed $50,000 of his indebtedness, agreed to carry out the contracts, and gave him its common stock and part of the preferred stock. The balance of the preferred stock was reserved for sale. The president of the John Davis Company, a creditor of Schott, was particularly active in bringing about the assignment and became one of the directors of the company. Schott continued as president to manage the affairs of the company, including the performance of the government contract, subject, however, to the control of a creditors' board of directors. In January, 1910, the company became bankrupt, and the receiver, which had sought the advice of creditors on the question of fulfilling the contract, but had secured the consent of only a few of them, continued the work under authority of the court, completing it in October, 1910. Schott became a bankrupt in March, 1910, and received his discharge therein in October, 1910.

The Surety Company knew nothing of the assignment of the contract or of the Engineering Company until the bankruptcy proceedings were begun. The United States never assented to the assignment of the contract, but continued to make all of its payments to and to deal directly with Schott alone. The moneys received from it were, however, paid by Schott to the Engineering Company. The accounts between the United States and Schott were finally adjusted between February 6 and 10, 1911; 5 per cent. of the contract price being retained by the government pursuant to the contract, which contained, among others, the following provisions:

"Ten per cent. of the amount of each monthly estimate will be witheld until the completion and acceptance of the work. One-half the amount of the reservations thus withheld will then be paid upon public bills certified and approved as above, the remaining one-half of said reservations to be so paid at the expiration of one year from the time of the completion and acceptance of the work, subject, however, to the provisions of paragraph 56 of these specifications. * * * The contractor shall guarantee all work and materials and keep same in perfect repair and condition for a period of one year after the completion and acceptance, unless hereinafter, or in the contract, otherwise stipulated. * * *

"56. Reservation.—One-half of the 10 per cent. reservation hereinbefore provided to be made on all payments will be held for a period of one year after the completion and acceptance of the work. And the contractor agrees that should he fail to make necessary repairs the same may be done by the government at his expense."

Under the act of 1905, laborers and materialmen are given a right of action on the bond in the name of the United States—

226 F.—42

"in the Circuit [now District] Court of the United States in the district in which the contract was to be performed * * * and not elsewhere, * * * if no suit should be brought by the United States within six months from the completion and final settlement of said contract: * * * Provided, that [such] suit * * * shall not be commenced until after the complete performance of said contract and final settlement thereof."

No suit having been brought by the United States, action was begun in its name for the use of a number of materialmen and others who might join, on August 16, 1911, more than 6 months after the adjustment of the accounts, but during the year for the retention of the 5 per cent. by the government.

Demurrers to certain pleas of the Surety Company were sustained, on the ground that all defenses could be made under other pleas. Each of the parties having requested direction of a verdict in its favor at the close of the evidence, the court made special findings of fact and conclusions of law, refused some propositions offered by each of the parties, and entered judgment in favor of Schott on his special plea of discharge in bankruptcy, and in favor of the Surety Company against all but five of the claimants. As to these five, judgment was rendered in their favor and against the Surety Company for the balance due for materials furnished to Schott prior to January 2, 1909, with interest thereon at 5 per cent. from the commencement of the suit, but not for those furnished thereafter either to Schott or to the Engineering Company, except in the case of one claimant, which, unlike the others, had no knowledge of the assignment at the time the goods were supplied. The claims of those who supplied materials only after January 2, 1909, or who had been paid in full for all goods theretofore furnished, were denied, regardless of whether such goods were consigned to Schott or to the Engineering Company.

The claim of the United States Equipment Company for rental at $42.82 per month after June, 1909; and for return freight paid by it in October, 1909, in accordance with its contract with Schott for the use of cars, track, and equipment at the station, and for the expense of loading and the freight thereon to and from the station from September 1, 1908, to the end of October, 1909, was denied, on the ground that this use, for the hauling of work and materials upon and about the grounds, was not labor or materials of such kind or character as to entitle it to recover.

The total claims were in excess of $38,000; the judgments totaled something over $15,000. The aggregate of the claims, without interest, exceeded the penalty of the bond, with interest thereon from the commencement of the suit; that of the claims allowed, with such interest, was less than the penal sum.

In case No. 2092, all but eight of the parties whose claims were denied in whole or in part seek a reversal as against both Schott and the Surety Company. In case No. 2093, the Surety Company seeks a reversal of the judgments rendered against it in favor of the five claimants.

[1] 1. The main question to be determined is the effect of the assignment of the contract by Schott. The Surety Company contends that, as respects the claimants, it amounted to a substitution of a new

principal in the contract, a principal for whose defaults it had assumed no responsibility; that this was such a material variation of the obligation guaranteed by it as to discharge it, though a corporation engaged for compensation in the surety business, from any liability on the bond either for goods theretofore supplied to Schott or for those subsequently furnished to the assignee and used in the work.

The claimants maintain that the statute, and the bond executed in accordance therewith, aim to protect all those who furnish labor or material for the work covered by the contract specified in the bond; that the obligation guaranteed by the Surety Company is not Schott's contractual debt for goods bought by him for the work, but his obligation as principal in the statutory bond to pay for all goods furnished for the work pursuant to his contract with the government, whether bought by him, his assignee, or subcontractor; that as the government never sanctioned the assignment, but continued to deal with and make payments to Schott alone, the original contract, by virtue of R. S. § 3737 (Comp. St. 1913, § 6890), remained in full force and effect, so that there could have been no change of principals in the only contract pursuant to which all labor and material were supplied.

The statute and bond, literally construed, would seem to afford protection only to those supplying the principal therein, the original contractor. Interpreted, however, in the light of the spirit and the purpose of the statute, it clearly aims to give a substitute for the ordinary mechanics' liens to all who furnish labor or material in the prosecution of the public work involved in the contract and pursuant thereto, whether their contractual relations are with the original contractor, or a subcontractor, or one in a position analogous to that of a subcontractor. On the other hand, it does not protect one who by agreement or assignment endeavors to put himself practically in the place of the contractor, either by assuming the latter's obligations under the contract or by agreeing to finance the work. This distinction is clearly brought out in the cases of Hardaway v. Surety Co., 211 U. S. 552, 29 Sup. Ct. 202, 53 L. Ed. 321, on the one hand, and Hill v. Surety Co., 200 U. S. 197, 26 Sup. Ct. 168, 50 L. Ed. 437 and Mankin v. Ludowici-Celadon Co., 215 U. S. 533, 30 Sup. Ct. 174, 54 L. Ed. 315, on the other.

In the Hardaway Case, A., B., and C., doing business under the firm name of A. & B., made a contract with the government for public work. Two years later, the firm agreed with C. that he should pay the firm debts, make all future purchases in his own name, and receive all profits from the contracts. C. did the work, but the government checks continued to be payable to the firm. Two years thereafter, C. entered into a contract with D. and E., which, after reciting C.'s financial inability to complete the work, provided that D. and E. should superintend its completion, finance it, and receive as compensation 15 per cent. of the total cost of completion, out of the reserve funds held and the payments to be made by the government. The court held that D. and E. were not subcontractors but financiers. They were to furnish the funds for the work and to superintend it; and

as the agreement specified the fund out of which they were to be paid, they had no other claim against C., and could have none against the Surety Company for materials supplied by them for the work. In the Circuit Court of Appeals (Hardaway & Prowell v. National Surety Co., 150 Fed. 465, 80 C. C. A. 283), Judge Lurton, while holding that D. and E. as mere lenders còuld not recover, stated that any person supplying labor or material either to C. or to D. and E. could claim under the bond. This was clearly in accordance with the principle of the Hill Case, in which the Supreme Court, reversing the lower court, had upheld the claims of materialmen under subcontractors, in a suit on the bond, and of the Mankin Case, in which similar claims were again sustained, notwithstanding the fact that the original contractor had paid the subcontractor in full.

If, in the instant case, the Engineering Company were the claimant, the Hardaway Case would be in point. Here, however, as in the Hill Case, the claimants have supplied materials for the work pursuant to the contract, whether they furnished them before or after the assignment. In our judgment, there is no substantial difference in the legal relation, and therefore none in the rights, of materialmen dealing with a subcontractor and those dealing with an assignee, if the assignment has not been sanctioned by the government. From the standpoint of the materialmen, such an assignment is, in effect, but a subletting; the original contract remains in full force; the original contractor is still responsible for the undertaking.

It follows, therefore, that all of the claimants who supplied material or labor for the work covered by the contract, either to the original contractor or to the assignee, and whether with or without knowledge of the assignment, were entitled to the full benefit of the bond, the statutory substitute for a lien, unless, by some act of his own, one or the other claimant may have released or waived or may be estopped from asserting his right.

[2] 2. On behalf of the Surety Company, it is urged that the bond must be dealt with as if several bonds had been given, one to the government, and one to each claimant for the sole protection of the obligee; that in this aspect the assignment, even though invalid as to the United States, and the assent thereto by a claimant evidenced by accepting payment from the assignee on account of the entire claim or by filing the entire claim against the assignee's estate in bankruptcy, make such a material change in the obligation guaranteed to such claimant as will release the surety from any liability to him.

While the argument as to the dual character of the bond is clearly sound (Equitable Surety Co. v. McMillan, 234 U. S. 448, 456, 34 Sup. Ct. 803, 58 L. Ed. 1394), the conclusion sought to be drawn therefrom does not follow. The obligation guaranteed by the bond is not, as the contention implies, that Schott as purchaser will pay for goods sold to him by each of the assumed obligees, but that he as the contractor (and as long as the assignment is not recognized by the government, the only contractor) will pay for all goods furnished by the obligee pursuant to the only contract mentioned in the bond, that between Schott and the United States, regardless of whether Schott

or his assignee carrying on the work in Schott's name or a subcontractor is primarily liable therefor as the actual purchaser thereof.

As a materialman's assent to the assignment could not vary this obligation, the principle contended for is entirely inapplicable.

[3] 3. A claimant could release or waive his rights under the bond in whole or in part, but as a mere assent to the assignment and to the assumption by the assignee of the assignor's obligations, while conferring rights on the claimant as against the assignee, would not amount to a novation (Ill. Car & Equipment Co. v. Linstroth Wagon Co., 112 Fed. 737, 50 C. C. A. 504), or operate to discharge the original debtor from his personal obligation, a fortiori it would not effectuate a release of a lien on property, or a discharge of either the principal or surety in the statutory substitute therefor, the bond. It is not contended, and, under the findings and the evidence, it could not be successfully urged, that any claimant expressly released or waived his claim against Schott or the Surety Company.

[4] 4. The finding of the court that the Davis Company consented to and helped to bring about the substitution of a new principal in the contract, and that the assignment contract forced a new principal into the contract, while called a finding of fact, is in effect a conclusion of law, and one in which we cannot concur, inasmuch as, without the government's consent, no new principal could, as a matter of law, be forced into the only contract in question, that between Schott and the United States.

[5] 5. Neither the Davis Company nor any other creditor is estopped from asserting his rights against the Surety Company because, irrespective of all else, an element essential to an estoppel in pais is lacking—damage to the Surety Company. The findings and the evidence demonstrate that the creation of the corporation and the assignment to it of Schott's interests brought fresh capital into the enterprise and delayed the failure; that neither this nor the completion of the work by the receiver diminished the rights of or damaged the Surety Company; that any payments made by and any dividends obtained from filing claims against the Engineering Company have reduced the liability of Schott and the Surety Company.

[6] 6. No question of election of inconsistent rights or remedies is involved. Under the bond, the principal and the surety are liable for labor and material furnished for the work pursuant to the contract. This does not exclude or limit any personal obligation of the contractor, or the assignee, or both, either directly, as debtor, for goods bought or by reason of the assumption of any such debt. Moreover, the creditors, far from electing to release Schott, very properly filed their claims against his estate in bankruptcy, as well as against that of his assignee. They thereby asserted their intention to hold each of them, not their election to accept the assignee as their sole debtor. Anglo-American Land M. & A. Co. v. Lombard, 132 Fed. 721, 68 C. C. A. 89.

[7] 7. Inasmuch as all defenses were properly permitted to be made under the three pleas, there was no error in sustaining the demurrers to the special pleas other than that of Schott's discharge in bankruptcy.

[8] 8. One of these defenses involved the question whether there

was "complete performance and final settlement of the contract," within the meaning of the statute, on or before February 11, 1909, or whether the guaranty and obligation to keep in repair during the year that the government retained the 5 per cent., postponed either the completion or the settlement for a year. In the latter event, an action brought in August, 1911, could not be maintained.

We agree with the views expressed by the trial judge on both points. 195 Fed. 306. The statutory phrase "settlement thereof" does not mean "payment therefor." When a final accounting was had between Schott and the government, the contract was finally settled, even though payment of part of the balance found due on the accounting was to be withheld for a year as security for a guaranty of the work and the covenant to keep it in repair during that period. Ill. Surety Co. v. United States, 215 Fed. 334, 131 C. C. A. 476.

Obviously, too, such a guaranty and covenant does not prevent complete performance of the work itself. Under a literal construction of the act, action on the bond would be postponed until every collateral guaranty and covenant to repair contained in the contract had expired by limitation, whether it be in one or in many years. In our judgment, however, the true intent and purpose of the statute are to give legal redress after the public work itself shall have been completed and accounts therefor adjusted.

[9] 9. Inasmuch as the principal of the claims to be allowed is in excess of the penalty on the bond, with the interest thereon, it is immaterial whether or not interest at 5 per cent. is allowed on each claim. We agree, however, with the ruling of the trial court that, as the amount of the claims was liquidated and undisputed, the controversy being confined to the question of liability for the whole or a definite part thereof, interest was properly allowed from the commencement of the suit.

[10] 10. The principal of the bond, however, is not the measure of liability thereon. Failure of the surety to discharge its obligation thereunder after proper demand or commencement of suit subjects it to the payment of interest. Under Hurd's Rev. St. Ill. 1897, c. 74, § 2, as construed in Holmes v. Standard Oil Co., 183 Ill. 70, 55 N. E. 647, this is at the rate of 5 per cent. per annum from the commencement of the suit.

[11] 11. The claim of the United States Equipment Company should be allowed. The statute is broader than many of the mechanic's lien acts. It covers, not only labor and material that go directly into the completed structure, but all labor and material furnished "in the prosecution of the work provided for in such contract." The work performed by this claimant through the use of its equipment was well within the statutory provision. Surety Co. v. Lawrenceville Cement Co. (C. C.) 110 Fed. 717; Surety Co. v. Bryant, 147 Fed. 155, 77 C. C. A. 397.

[12] 12. If this were an ordinary surety bond, conditioned on prompt payment for goods supplied to a contractor, there would be no doubt of the provability of, and Schott's consequent discharge from, claims thereunder. The condition clearly was broken before Schott's bankruptcy. The claims were then "a fixed liability, evidenced by an

instrument in writing, absolutely owing," within section 63, subsec. 1, of the Bankruptcy Act.

The statutory provision for only one suit, and that in the District Court of the district in which the work is done, and the further provision that no suit shall be brought by a claimant until six months after completion of the work and final settlement, and then only if the United States failed to sue, do not make the liability itself under the bond any the less absolute after breach of the condition, whatever their effect may be as limitations of the right created by the statute (Texas Cement Co. v. McCord, 233 U. S. 157, 34 Sup. Ct. 550, 58 L. Ed. 893), on the time, method, and forum for determining or liquidating any disputed claim.

Nor does the fact that a claimant may eventually obtain no share in the judgment for the penalty of the bond, because of the government's right to priority, or only a proportionate part thereof less than his claim, because of the necessity of sharing pro rata with other claimants, affect the absolute character of the liability.

We agree with the ruling of the trial judge, contrary to that in Re Hawley (D. C.) 194 Fed. 751, that Schott's discharge in bankruptcy is a good defense. The judgment in Schott's favor will therefore be affirmed, with costs as to him, in case No. 2092.

As to the Surety Company, the judgment will be reversed, at its costs, in both proceedings, and the cause remanded for retrial.

On Petition for Rehearing and on Motion to Modify Opinion and for Entry of Final Judgment.

Before BAKER and MACK, Circuit Judges.

MACK, Circuit Judge. The able brief filed on the petition for rehearing presents no matter that was not heretofore fully considered by the court. The petition will be denied.

The successful parties move that, instead of remanding the cause for retrial, this court enter a judgment, or direct the District Court to enter a judgment, on the findings heretofore made therein. In opposition thereto, it is urged for the first time, by what may be deemed a counter motion, that this court should dismiss the case, on the ground that it is a suit at common law and that the issues can be determined only in a court of equity.

[13, 14] Since the briefs on this motion were submitted, the Judicial Code has been amended by the Act of March 3, 1915. Section 274a has been added thereto. It forms part of chapter 11, covering "Provisions Common to More Than One Court," and is as follows:

"Sec. 274a. That in case any of said courts shall find that a suit at law should have been brought in equity or a suit in equity should have been brought at law, the court shall order any amendments to the pleadings which may be necessary to conform them to the proper practice. Any party to the suit shall have the right, at any stage of the cause, to amend his pleadings so as to obviate the objection that his suit was not brought on the right side of the court. The cause shall proceed and be determined upon such amended pleadings. All testimony taken before such amendment, if preserved, shall stand as testimony in the cause with like effect as if the pleadings had been originally in the amended form."

If this cause of action were cognizable only in a court of equity, no substantial amendment to. the pleadings would be necessary to effectuate the change now permitted by the statute, and, as the findings of fact are undisputed, it would be the duty of this court to enter or to direct the entry of such a decree as our conclusions of law require. There would be no difference in substance between such a decree in equity and the proper judgment at law, and the defendant would have. no ground to complain that the enforcement of a judgment might be less efficacious than that of a decree.

But even without the new statute the objection could not prevail, for inasmuch as the court of law clearly was not without jurisdiction of the subject-matter, it comes too late. U. P. R. R. Co. v. Whitney, 198 Fed. 784, 787, 117 C. C. A. 392; Reynes v. Dumont, 130 U. S. 354, 9 Sup. Ct. 486, 32 L. Ed. 934. Again, as the case was, in effect, tried by the court without a jury, and its findings of fact are not attacked, it is of no practical importance whether a court of law or of equity was the proper forum. Ill. Surety Co. v. United States, 215 Fed. 334, 131 C. C. A. 476. The counter motion to dismiss will be denied.

[15] It is, however, urged that, dealing with the case as an action at law, this court is without power to modify the judgment of the District Court, and can only remand with directions to award a new trial. The objection is without merit. This court is vested with power to modify, as well as to affirm or reverse, any judgment of the District Court (R. S. § 701 [Comp. St. 1913, § 1669]); Act March 3, 1891, c. 517, § 11, 26 Stat. 829 (Comp. St. 1913, § 1651) and in a case tried without a jury, where the findings of fact made by the court are undisputed, as well as when they are agreed upon by the parties, as in Thomas v. Matthiessen, 232 U. S. 221, 34 Sup. Ct. 312, 58 L. Ed. 577, the proper judgment may be rendered thereon in the appellate tribunal after a reversal of the judgment of the trial court. See, too, Ins. Co. v. Boykin, 12 Wall. 433, 20 L. Ed. 442; Ins. Co. v. Piaggio, 16 Wall. 378, 21 L. Ed. 358.

The motion to modify the order heretofore made, and to render judgment in accordance with the findings of fact made by the trial judge, and the law as held in the opinion heretofore filed, will be granted. The judgment will be in debt for the face of the bond, with damages for the same amount, for the use of the plaintiffs in error, in case No. 2092. As the total amount due them under the findings exceeds the face of the bond, the damages for the use of each of them will be reduced pro rata, and will be for the several amounts as found by the trial court, so reduced. The reduced damages are specified in the judgment order which we direct to be entered, and bear interest at 5 per cent. per annum from August 16, 1911.

The judgment of the District Court is reversed, and the cause remanded, with directions to enter. therein the judgment which we have entered here and to enforce said judgment by proper process.

NOTE.—Judge SEAMAN concurred in overruling the petition for rehearing. He did not participate in the consideration of the motion and counter motion.