### LONDON & LANCASHIRE INDEMNITY CO. OF AMERICA v. SMOOT.

(Court of Appeals of District of Columbia. Submitted November 3, 1922. Decided February 5, 1923. Motion for Modification of Judgment Overruled February 24, 1923.)

No. 3827.

1. **United States ⬅74½, New, vol. 12A Key-No. Series—Materialman's suit on government contractor's bond within six months after final settlement is premature.**

   Under Act Feb. 24, 1905 (Comp. St. § 6923), permitting suit by creditors on the bond of a government contractor, if no action is brought by the United States within six months from the final settlement of said contract, the United States only has a right to bring suit on the bond within six months after the final settlement, and if a materialman brings suit within that time, it is premature.

2. **United States ⬅74½, New, vol. 12A Key-No. Series—Creditor may intervene in other creditor's suit on government contractor's bond within year after final settlement.**

   Though the proviso of Act Feb. 24, 1905 (Comp. St. § 6923) that only one action shall be brought by a creditor on a materialman's bond, and that any creditor may file his claim in such action and be made a party thereto within one year from the completion of the work under the contract, and not later, literally construed, would prevent any creditor from intervening in a creditor's suit, where the final settlement of the contract was delayed so long that the year from the completion of the contract would expire before the expiration of the six months after the final settlement within which the United States may sue on the bond, the statute will not be given a construction leading to such absurd results, but will be construed as requiring the limitation for intervention by the creditors to be computed from the same date as the other limitations; that is, the final settlement of the contract.

3. **Statutes ⬅183—Things within letter of statute, but not within its spirit, are not covered thereby.**

   A thing may be within the letter of the statute, and yet not within the statute, because not within its spirit, nor within the intention of its makers.

4. **Statutes ⬅181(2)—Construed to effectuate intent of Legislature and avoid absurd results.**

   Statutes should be so construed as to effectuate legislative intention, and, if possible, to avoid injustice or absurd results.

5. **United States ⬅67(2)—Surety on government contractor's bond not liable to materialmen for interest before demand.**

   A surety on the bond of a government contractor is not charged with the duty of ascertaining whether the contractor was paying for material and labor as it was furnished before being requested to see

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to it that such claims were paid, and therefore is not chargeable with interest until such request or demand is made.

**6. United States ⬅⬀67(2)—Statutes regulating interest on liquidated demands and on damages for breach of contract do not affect liability of surety.**

Code, § 1184, regulating allowance of interest on liquidated debts, and section 1185, regulating allowance of interest on damages for breach of contract, do not charge the surety of the government contractor with interest on claims of materialmen before demand is made by the materialmen on the surety.

Appeal from the Supreme Court of the District of Columbia.

Suit by the Rosslyn Steel & Cement Company against the London & Lancashire Indemnity Company of America, in which Lewis E. Smoot intervened. From a judgment in favor of the intervener, defendant appeals. Reversed and remanded, with directions to enter judgment for intervener, including interest for a shorter period.

H. J. Pack and Levi H. David, both of Washington, D. C., for appellant.

W. G. Johnson, of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and BARBER, Judge of the United States Court of Customs Appeals.

BARBER, Acting Associate Justice. This case involves the construction of what is commonly called the Materialmen's Acts of 1894 and 1905, the last of which was approved February 24, 1905. 33 Stat. 811 (Comp. St. § 6923). The title of the statute is:

"An act for the protection of persons furnishing materials and labor for the construction of public works."

It provides that persons furnishing contractors with labor and materials in the construction of public works, in default of payment therefor by the contractor, shall have the right to intervene and be made party to an action, if one is instituted, in favor of the United States on the bond of the contractor, and may recover therein, subject to priority on the part of the United States; that if no action is brought by the United States within six months from the completion and final settlement of said contract, any such person may bring suit in the name of the United States for his own use and benefit against the contractor and the sureties on his bond.

The issues presented here involve the construction to be given the following provisions of the act:

"Provided, that where suit is instituted by any of such creditors on the bond of the contractor, it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later: And provided further, that where suit is so instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later."

The undisputed facts are that Pawling & Co. had a contract with the United States of the kind contemplated in the statute; that appel-

lant was surety on its bond, and the appellee furnished to said contractor labor and material in the performance of its contract.

Pawling & Co. actually completed the work in October, 1919. The last of the buildings contracted for was substantially completed August 29, 1919, and the authorized officers of the United States administratively determined that the latter date was the date of the completion of the contract, and so treated it in making the settlement with Pawling & Co. The last item of labor or material furnished by the appellee to Pawling & Co. was in August, 1919. The last payment made by the company to him was in December, 1919, on the 13th day of which month there was a balance due of $3,335.52. April 12, 1920, appellee accepted a note from said company for that amount, due in six months, with interest, which note was not paid. This note was taken with the knowledge of the surety and upon its agreement that the acceptance thereof by appellee should be without prejudice to his claim against it. The final settlement with the government, contemplated under the proviso, was made January 8, 1921.

No suit on the bond was brought by the United States, but the Rosslyn Steel & Cement Company, in the name of the United States, brought its suit thereon against the contractor and the surety November, 10, 1921. Notice as required by the act was given to four other known creditors, and on December 31, 1921, the appellee, who was not notified, but was in fact a fifth creditor, intervened and filed his declaration under leave of court. On the pleadings judgment was rendered in his favor in the Supreme Court of the District, and the case is here on appeal.

Two questions only are necessary of consideration: (a) Under the facts did the appellee have a right to intervene? (b) Is he entitled to interest on the amount of his claim from August 31, 1919, the end of the month in which the last deliveries of material or work were made to Pawling & Co., or from December 31, 1921, the date of the filing of intervening declaration which was his first demand upon the surety?

The judgment was for the penalty of the bond, $129,963, with proviso that the same be released upon payment to the intervener of the amount due, $3,335.52, with interest from August 31, 1919, together with costs. The appellant admits, if it is held liable, that the appellee may recover interest from date of judgment, or from December 31, 1921.

[1] Until six months after the final settlement the United States only had a right to bring suit provided for in the statute, and if a materialman brought suit within that time it was premature. Texas Cement Co. v. McCord, 233 U. S. 157, 34 Sup. Ct. 550, 58 L. Ed. 893; Miller v. American Bonding Co., 257 U. S. 304, 42 Sup. Ct. 98, 66 L. Ed. 250, decided December 12, 1921. This six months expired July 8, 1921. November 10, 1921, less than six months after the time when a materialman might sue, the suit of the Rosslyn Steel & Cement Company was brought. Thereupon a right would accrue to any materialman of Pawling & Co. to intervene in that suit, provided the statute be construed to give such creditors the right to so intervene within the

six months following the first six months during which the United States only might bring suit against the contractor and surety.

The second quoted proviso, however, states that, where a suit such as that of the Rosslyn Company is instituted, "any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later."

[2] The appellee here was such a creditor, but he did not file his intervening petition until December 31, 1921. This was within six months after the expiration of the six months reserved to the United States, but it was more than two years and two months after the completion of the work, and based upon this fact alone appellant claims appellee had no right to intervene, that the provisions of the second proviso were in effect a statute of limitations, and that the statute had run against him.

Assuming this to be its true interpretation, it is clear that all creditors except the Rosslyn Steel & Cement Company are deprived of any benefit under the act in question, because only one creditor had the right to bring his suit within the six-months period provided for that purpose. Other creditors, if any, had only the right to intervene. Texas Cement Co. v. McCord, supra; Miller v. American Bonding Co., supra. In other words, while the statute in express terms provides that any creditor may intervene within a year after the completion of the contract, and the purpose of the act is to allow all creditors of contractors to recover, if the penalty of the bond is large enough to satisfy their claims, yet, in a case like the one before us, only one such creditor may actually enjoy that right, because October 19, 1920, is the end of the year from the finishing of the work under the contract, while July 8, 1921, is the first date any creditor could bring his suit.

The Supreme Court of the United States, in Bryant Co. v. New York Steam Fitting Co., 235 U. S. 327, 35 Sup. Ct. 108, 59 L. Ed. 253, well said of this statute that it was undoubtedly ambiguous, and that, considering the letter only of the provisos, they absolutely repelled accommodation. It also said the purpose of the act was beneficial, and that the court should try to give coherence to its provisions and accomplish the intention of Congress. While the precise question before us was not considered there, the court did say that:

"The act, however, imposes a limitation of time on all claimants; the time to begin to run from the same event."

It is obvious that, if the language of the second proviso be literally construed, the intervener here is deprived of his right of recovery. It is equally obvious that the intent of the act was to give him, in common with all other creditors, that right, provided the bond was sufficient for the purpose. Only one of the creditors could bring a suit in the name of the United States. All others must intervene therein, so that, if the appellant's contention be upheld, one of a large number of creditors, who, by diligence or otherwise, files the first suit, may thereby deprive all others of the benefit of the statute. Not only this, but the opportunity is open, by collusion between the surety and a

creditor, for a creditor in a small amount to designedly deprive all others of relief.

[3] Such results are unjust and absurd, and manifestly were not intended by Congress. The law is well settled:

"That a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." Holy Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226.

[4] Statutes should be so construed as will effectuate the legislative intention, and, if possible, avoid injustice or absurd results. Lau Ow Bew v. United States, 144 U. S. 47, 12 Sup. Ct. 517, 36 L. Ed. 340; Hawaii v. Mankichi, 190 U. S. 197, 23 Sup. Ct. 787, 47 L. Ed. 1016, and cases cited. In view of the interpretation given to the act by the Supreme Court in the Bryant Company Case, and others already referred to, that its purpose was to unite all claimants in a single proceeding, as to whom the statute of limitations begins to run from the same event, and that the date of final settlement is the time from which it begins to run as to a creditor under the first proviso, we hold that the time limit intended by Congress within which other creditors may intervene in such suit is within a year from the date of the same settlement. Such settlement is the "same event" for both the instituting and intervening creditors, from which the statute begins to run.

We think this construction is necessary in order to give effect to the manifest intent of Congress, and to prevent injustice and absurd results. The same conclusion was reached by the Circuit Court of Appeals in the Ninth Circuit. See Pederson et al. v. United States, 253 Fed. 622, 165 C. C. A. 248.

[5] As to interest: While the amount thus involved is not large, the question is perplexing. The authorities are very numerous, and their conclusions difficult to reconcile. Of course, the determination in each case depends upon the terms of the bond and various other relevant facts.

In many of the cases the question has been whether, when the damages exceeded the penalty of the bond, interest might be recovered against the surety. As an instance of this kind, see United States v. United States Fidelity Co., 236 U. S. 512, 35 Sup. Ct. 298, 59 L. Ed. 696 where many authorities are discussed. In that case the differing views of courts, state and federal, are pointed out, and the decision follows the rule that:

"Sureties, if answerable at all for interest beyond the amount of the penalty of the bond given by their principal, can only be held for such an amount as accrued from their own default in unjustly withholding payment after being notified of the default of the principal."

In the case at bar the statute does not mention interest, and the bond makes no provision for its payment. Its condition is that Pawling & Co. shall well and truly perform its contract, and shall promptly make payments to all persons supplying it with labor and materials in the prosecution of the work provided for therein, following substantially the language of the statute. In the statute it is provided that the

surety on a bond may pay into court the penalty named therein and be relieved from all further liability.

The bond imposes no further obligation upon the surety as regards materialmen than the language already referred to. We do not think it became the duty of the surety to ascertain whether or not the contractor was paying for material and labor as it was furnished from time to time, but that the statute and the bond contemplated that, when thereunto requested, the surety should see to it that such claims were paid, and that until such request or demand was made the right to recover interest of the surety did not attach. In the case here no such request or demand was made until intervener filed his declaration December 31, 1921. In 1 Am. Lead. Cas., p. 499, it is said:

"In cases of a contingent liability, such as that of a surety, a party is not considered as in default until notice or demand, and interest does not begin to run till then."

Although that question did not stand for decision in the case, the court, in United States v. Quinn, 122 Fed. 65, 58 C. C. A. 401, said that the settled rule in federal courts was that:

"A surety, whose undertaking obligates him contingently for unliquidated damages, is not considered as in default until notice or demand, and interest does not begin to run upon the amount until then"—citing McGill v. Bank of the United States, 12 Wheat. 512, 6 L. Ed. 711; United States v. Hills, Fed. Cas. No. 15369; Ives v. Merchants' Bank, 12 How. 159, 13 L. Ed. 936; Mowry v. Whitney, 14 Wall. 620, 20 L. Ed. 860; Blewett v. Front Street Cable R. Co. (C. C.) 49 Fed. 126.

On this question the following cases may also be consulted: Leggett et al. v. Humphreys, 62 U. S. (21 How.) 66, 16 L. Ed. 50; Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 Sup. Ct. 614, 61 L. Ed. 1206; Illinois Surety Co. v. Peeler, 215 Fed. 334, 131 C. C. A. 476; Id., 240 U. S. 214, 36 Sup. Ct. 321, 60 L. Ed. 609; Redfield v. Bartels, 139 U. S. 694, 11 Sup. Ct. 683, 35 L. Ed. 310; United States v. Curtis, 100 U. S. 119, 25 L. Ed. 571; Stephens v. Phoenix Bridge Co., 139 Fed. 248, 71 C. C. A. 374; U. S. v. Illinois Surety Co., 226 Fed. 653, 141 C. C. A. 409; Laughlin Co. v. American Surety Co., 114 Fed. 627, 51 C. C. A. 247; Folz v. Tradesmen's Trust & Saving Fund Co., 201 Pa. 583, 51 Atl. 379; Washington Bank v. Shurtleff, 4 Metc. (Mass.) 30; Heath v. Gay, 10 Mass. 371.

[6] Both parties refer to sections 1184 and 1185 of the Code of the District of Columbia, but we think nothing therein requires the adoption of a different rule in this case than the one already suggested.

The judgment below is reversed, with costs, and the case remanded, with direction to allow interest on the amount recovered from December 31, 1921.