## UNITED STATES, to Use of WENNEMER CONST. CO., Inc., v. ARNOLD et al.

### (District Court, D. Connecticut. September 3, 1920.)

### No. 2141.

1. **United States ☞67(3)—Final settlement made six months before action on contractor's bond.**

   A letter of the Bureau of Yards and Docks to a contractor, with other correspondence, *held* a final settlement as of the date of such letter, within Act Feb. 24, 1905 (Comp. St. § 6923), requiring government contractors to give bond, and providing that, if suit be not brought by the United States within six months from completion, then those supplying labor and materials may sue, notwithstanding correspondence by the architect, wherein he confused final payment and final settlement, and the further fact that a voucher and final release prepared by the architect was not signed by the bureau.

2. **United States ☞67(3)—"Final settlement" and "final payment" on government contracts distinguished.**

   Within Act Feb. 24, 1905 (Comp. St. § 6923), relating to actions on bonds of government contractors, the term "final settlement," which marks the beginning of the six-months period at the expiration of which materialmen, etc., may sue, refers to the administrative settlement, occurring *when the department determines the amount due, and is entirely distinct from the "final payment."*

   [Ed. Note.—For other definitions, see Words and Phrases, First Series, Final Payment; First and Second Series, Final Settlement.

3. **United States ☞67(3)—Subsequent consideration of extras held not to affect final settlement.**

   In an action on a government contractor's bond, the time of final settlement made by the department, which started the running of the six-

months period that must elapse under Act Feb. 24, 1905 (Comp. St. § 6923), before materialmen can sue, was not affected by the fact that the department thereafter considered small claims for extras.

At Law. Action by the United States, for the use and benefit of the Wennemer Construction Company, Incorporated, against Ray H. Arnold, doing business as the R. H. Arnold Company, and another. On plea to the jurisdiction, asserting that the suit was premature. Plea overruled.

Tuttle, Gilman & Marks, for use plaintiff.

Lewis Sperry, of Hartford, Conn., and E. P. Morey and William Henry White, both of Washington, D. C., for defendants.

THOMAS, District Judge. This is a suit by subcontractors of defendant Arnold, who contracted to construct a building for the Navy Department at submarine base, New London, Conn., under direction of the Bureau of Yards and Docks and by authority of an act of Congress. Defendant Arnold gave a bond to the United States, with the Globe Indemnity Company, codefendant, as surety, as required by the Act of Congress of August 13, 1894 (28 Stat. 278), as amended by Act of February 24, 1905 (33 Stat. 811 [Comp. St. § 6923]).

The plea to the jurisdiction is upon the ground that the suit was prematurely filed, and therein it is alleged that—

"There has been no 'final settlement' within the meaning of the act of Congress upon which the plaintiff's and intervening petitions are based" and "the period of six months allowed to the United States within which to bring suit upon the bond set out in the petition and intervening petitions has not yet begun to run."

The question, therefore, to be here decided, is whether or not six months prior to the bringing of these actions there was a "final settlement" within the meaning of the statute, and what is meant by the words "final settlement" as used in the act.

The parties have entered into a stipulation in action No. 3, in which stipulation the facts pertinent to the question here involved are set forth. Additionally, the parties have stipulated (as the facts in each of the three cases are substantially the same) that the decision made by this court in action No. 3 shall govern and control in each of the other actions. The facts discussed in this memorandum, however, are only the facts appearing in action No. 3.

This suit was brought on March 17, 1919. Plaintiff's petition, among other things, alleges:

"* * * And said contract and the work thereunder and said additional and extra work were duly completed and were accepted by the United States government and the Bureau of Yards and Docks, Navy Department, and final settlement thereof was dated on or about July 30, 1918. * * * That no action or suit has been brought by the United States of America against the defendants, or either of them, within the six months immediately succeeding the completion and final settlement of the contract between Ray H. Arnold, doing business as Ray H. Arnold Co., and the United States government, nor has one year elapsed prior to the commencement of this action since the completion and final settlement of said contract."

If the facts therein alleged are true in fact and law, the plea must be overruled, and, if they are not, the plea must be sustained.

On October 20, 1917, the defendant Arnold entered into a written contract (No. 2538) with the United States, whereby Arnold agreed to construct and complete at the submarine base, New London, Conn., one building for use as officers' quarters in accordance with the provision of specification No. 2538, as contemplated by item 2, paragraph 290, thereof. The work was to be completed in 118 calendar days. The contract further provided as follows:

"(6) For and in consideration of the faithful performance of this contract, the party of the first part [contractor] shall be paid upon vouchers prepared, certified, and approved in the usual manner and payable through such Navy Pay Office as the party of the second part [United States] may elect, the sum of ninety-three thousand nine hundred ninety-one ($93,991.00) dollars in the manner provided in the specification aforesaid."

Said contract was signed on behalf of the United States by the Acting Chief of the Bureau of Yards and Docks under the direction of the Secretary of the Navy. On October 20, 1917, the Globe Indemnity Company executed and delivered, and there was filed, a bond in the usual form for the sum of $28,197.30. The obligation of the bond was for the payment by the contractor to all subcontractors, and for material, labor, etc. During the course of the work certain extra work was ordered by the United States.

On January 25, 1918, Wennemer Construction Company entered into a contract with the defendant Arnold to supply certain brick, lime, cement, etc., on the officers' quarters referred to, and in course of time it fulfilled its contract with the Arnold Company. All of the things required to be done by the Arnold Company under its contract with the government were done, and the work was completed and accepted, more than six months and less than one year prior to the institution of these proceedings, except as to a few minor items. The contention of the plaintiff is that "final settlement" was fixed by the bureau on July 30, 1918. The contention of the defendant is that there never was a "final settlement" within the meaning of the statute.

On July 30, 1918, the bureau wrote the architect as follows:

"Subject: Contract No. 2538, October 20, 1917, of R. H. Arnold Company, for Building for Officers' Quarters, Submarine Base, New London.

"Reference: (A) Base Letter No. 2538, 7/24/18.

"1. For the purpose of determining the contractor's responsibility for delay, the contract will be regarded as complete as of July 22, 1918, when all the work, except a few items of a minor character, were finished.

"2. The period of delay—February 26 to July 22—was accordingly 146 days. Of this period, 3 days were lost on account of delay in staking out the building, 22 days by reason of abnormal weather conditions, and 3 days owing to water shortage; these delays, amounting to 28 days, being regarded as unavoidable within the meaning of paragraph 14 of the general provisions of the contract. For the remainder of the delay, 118 days, the contractor appears, upon the facts at hand, to be responsible, and liquidated damages therefor, amounting, at the agreed rate of $100 a day, to $11,800, will accordingly be assessed."

The plaintiff claims that this letter, together with other correspondence, later referred to, administratively fixed July 30, 1918, as the date

of "final settlement," within the terms of the statute and the decisions of the courts respecting its meaning.

On March 8, 1919, the bureau forwarded to attorneys for original plaintiffs herein certified copies of the contract and bond, which had been duly certified by the Treasury Department, where duplicate originals were filed. The letter of the bureau accompanying the same is as follows:

"Subject: Contract No. 2538, October 20, 1917, of R. H. Arnold Company, for Officers' Quarters Building, Submarine Base, New London, Conn.

"Inclosure: 1.

"Gentlemen: With reference to your letter of February 5, addressed to the Treasury Department, with which you inclosed affidavit in behalf of the Wennemer Construction Company, the bureau transmits herewith 'a copy of the above-mentioned contract and accompanying bond. These copies are certified by the Treasury Department, where the original documents are filed.

"Basis of settlement under this contract was approved by the bureau July 30, 1918."

This letter was evidently in reply to the attorneys' letter, dated February 5, 1919, inclosing an affidavit as required by the statute. Some time subsequent to August 6, 1918, there was prepared in the office of the architect a paper in the form of a statement, having no title or other name, but sometimes referred to in the department as a voucher; also a paper headed "Final Release." These papers were never signed by any one, nor was any other act ever done in relation thereto, except that they were sent by the architect to the contractor, Arnold, who received the same on or about August 15, 1919.

The voucher, Exhibit A, discloses that the "date of delivery or service" corresponds to the identical date of the letter written by the bureau to the architect, to wit, July 30, 1918, in which it was stated that "the contract will be regarded as complete as of July 22, 1918." This voucher is a carbon copy on a form approved by the Comptroller of the Treasury, refers to the contract under consideration here, and shows the total amount that the contractor has earned by virtue of the contract and the extras. Therein are deducted the previous gross estimates, the 10 per cent. reservation, and the liquidated damages, and the amount thereunder found due to the contractor, viz. $390.12, is the amount due after deducting the reserve percentages and part of the claims of the government. The two final pages show the amounts of reserve percentages retained from all the earlier vouchers, and from that total there is deducted all liquidated damages, in accordance with the bureau's letter of July 30, 1918, not deducted in the earlier part of the voucher.

The "Final Release," which accompanied the above-described voucher, contains, among other things, the following recitals:

(a) "It is contemplated that final payment thereof shall not be made until the party of the first part shall have executed and delivered a final release of all claims or demands growing out of the contract."

(b) "Whereas, all the conditions, covenants, and provisions of the said contract have been performed and fulfilled by and on the part of the party of the first part" (Arnold).

(c) "In consideration of $82,103, * * * being the full and entire sum due upon the completion of the work."

This release in full is signed.

[1] From the foregoing it is still further apparent that July 30, 1918, was the day regarded as the date of final settlement, that these later documents (the voucher and final release) recognized such a status, and that they had reference to the subsequent step of "final payment." That this conclusion must be correct is further apparent from the letter of the bureau, dated March 8, 1919, in which it is stated:

"Basis of settlement under this contract was approved by the bureau July 30, 1918."

It was then but natural that the voucher and final release should be sent to Arnold for his signature. That he failed to sign and return them is of no importance here. The vital point is that they were sent. The steps necessary to be taken according to the "routing slip" all had to do with "final payment"—not "final settlement."

But the defendant lays stress on the point that the Exhibits A and AA (the voucher and final release) were not signed by the bureau. It was not necessary that they should be. They were mailed to the defendant, and it was apparent that they awaited only the signature of Arnold, and there was no particular reason why the Public Works Office should sign the voucher until it had been returned by Arnold with his signature first attached.

The plaintiff contends that the date of "final settlement," for the purpose of fixing the time within which a suit could be properly brought by subcontractors, was July 30, 1918, and that hence this suit, brought March 17, 1919, was more than six months after the date of final settlement and less than one year, as provided in Act Aug. 13, 1894, as amended by Act Feb. 24, 1905, which, so far as is here material, provides as follows:

"If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the Department under the direction of which said work has been prosecuted that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are hereby, authorized to bring suit in the name of the United States in the Circuit Court of the United States in the District in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his securities, and to prosecute the same to final judgment and execution: Provided, that where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later."

The wording of the statute is clear and explicit. The act specifically provides that a subcontractor is entitled to a certified copy of the contract, bond, etc., only in the event that six months have elapsed from the completion and final settlement of the contract, and only in the event that within six months no suit has been brought by the United States. The circumstance that the Treasury Department has certified

the contract, specification, and bond and the Bureau of Yards and Docks forwarded same to plaintiff's attorneys, equally indicate that the Treasury Department and the Bureau of Yards and Docks have both concluded and determined that there had been a "final settlement" of the contract, within the meaning of the act, more than six months prior to the certification and dispatch of the certified copy to plaintiff's attorneys.

In view of these facts it hardly requires judicial interpretation to ascertain when "final settlement" was made, or what the words signify within the meaning of the act. It further appears that in his letter of August 6th, replying to Arnold's telegram asking for "immediate partial payment," the architect says:

"Subject: Contract No. 2538 for Officer's Quarters; Partial Payment Voucher.

"Gentlemen: Your telegram of August 6th, requesting immediate partial payment on the above contract, has just been received. You are advised that the bureau has authorized an assessment of damages due to a certain number of days' delay in completion. The preparation of final partial payment voucher and reservation voucher is being held up awaiting decision as to whether the assessment for liquidated damages will be at the rate of $50 per day or $100 per day. As soon as instructions on this point has been received, final partial payment and reservation vouchers on the above contract will be prepared immediately and forwarded to you."

From this it is apparent that the architect must have considered "final settlement" as fixed, and that the only matter unfinished was the "final partial payment voucher and reservation voucher," because the architect adds that, as soon as instructions were received as to exact amount to be deducted for liquidated damages, "final partial payment and reservation vouchers * * * will be prepared immediately and forwarded you."

But the defendant contends that this is an erroneous conclusion, because of the contents of the architect's letter of October 17, 1918, which is as follows:

"Subject: Cont. 2538, for Officer's Quarters; Warranties and Completion of Items.

"Gentlemen: In line with previous request, you are reminded that final settlement cannot be made on the above contract until satisfactory ten-year warranty and bond for roofing have been submitted in accordance with par. 108 of the above specifications, and a satisfactory warranty for heating in accordance with par. 249 of the above specifications, to the effect that the contractor will repair or replace all work, materials, and equipment which may prove defective or insufficient within one year after the date of acceptance. You are further reminded that urinal basin to replace broken one, toilet partition rods, and curtain for Commander's shower bath have still not been supplied. The above items have been called to your attention repeatedly, and it is requested that they be complied with without further delay."

But, from a careful reading of that letter in the light of what preceded, it is apparent that what the architect meant when he used the words "final settlement" was not the "final settlement" as an administrative act, for the purpose of fixing the time within which suits by subcontractors could be brought, but "final payment," as had been requested by Arnold, and which had been the subject of the prior discussion. The fact is very apparent when we examine the letter and ascertain the

architect's reasons for declining to make final settlement. Bonds were necessary in connection with the roofing and heating clauses of the contract, and these Arnold had not furnished, and it was perfectly natural that "final payment" could not be made until these bonds were furnished.

That this conclusion must be correct is apparent from the tenor of the architect's letter, dated October 23, 1918, in answer to Arnold's "question" respecting the bonds, for the letter reads as follows:

"Subject: Cont. 2538 for Officers' Quarters; Warranty for Roofing.

"Gentlemen: 1. In answer to your question in regard to what kind of bond and warranty is desired, you are again referred to paragraph 108 of the specifications in which it is stated that: 'The contractor shall furnish a ten-year bond * * * in a sum equal to the value of the roofing work, warranting that for a period of ten years he will make at his own expense all repairs that become necessary to maintain the roofs in a waterproof condition, injury from any cause other than ordinary wear and tear of the elements being accepted.' The specifications would appear to be sufficiently clear on this point to answer your question."

Here again it appears that the furnishing of the bonds is all that stands in the way of "final payment," not "final settlement." The same conclusion is justified respecting the letter of the architect to Arnold, dated June 30, 1919, and it is not necessary to quote it.

[2] That there is this fundamental distinction to be drawn between "final settlement" and "final payment" appears from the opinion of the Supreme Court of the United States in Illinois Surety Co. v. United States, 240 U. S. 214, 36 Sup. Ct. 321, 60 L. Ed. 609, which case counsel on both sides cite and rely upon to establish their claim. Justice Hughes said (240 U. S. on pages 218, 219, 221, 222, 36 Sup. Ct. 323, 324, 60 L. Ed. 609):

"As such determinations are regularly made in the course of administration, nothing would seem to be gained by postponing the date, from which to reckon the six months, to the time of payment. Indeed, if an amount were found to be due from the contractor, and he was insolvent, there might be no payment, and, if payment were essential, there would be no date from which the time for the bringing of the creditors' action could be computed. The pivotal words are not 'final payment,' but 'final settlement,' and, in view of the significance of the latter term in administrative practice, it is hardly likely that it would have been used had it been intended to denote payment. * * * We think that the words 'final settlement' in the act of 1905 had reference to the time of this determination, when, so far as the government was concerned, the amount which it was finally bound to pay or entitled to receive was fixed administratively by the proper authority. It is manifestly of the utmost importance that there should be no uncertainty in the time from which the six months period runs. The time of the final administrative determination of the amount due is a definite time fixed by public record and readily ascertained. As an administrative matter, it does not depend upon the consent or agreement of the other party to the contract or account. The authority to make it may not be suspended, or held in abeyance, by refusal to agree. Whether the amount so fixed is due, in law and fact, undoubtedly remains a question to be adjudicated; if properly raised in judicial proceedings; but this does not affect the running of the time for bringing action under the statutory provision. In the present case the construction of the building was in charge of the Secretary of the Treasury and under the general supervision of the Supervising Architect. The Secretary of the Treasury was authorized to remit the whole or any part of the stipulated liquidated damages as in his discretion might be just and equitable. Act

June 6, 1902, c. 1036, 32 Stat. 310, 326. On August 21, 1912, the Supervising Architect, having received the certificate of the chief of the technical division of the office that all work embraced in the contract had been satisfactorily completed, made his statement of the amount finally due, recommending that only the actual damage (as stated) be charged against the contractor, and that the proper voucher should be issued in favor of the contractor for the balance, to wit, $3,999.01. And on the same date this recommendation was approved and actual damages charged accordingly by direction of the Secretary of the Treasury. This, in our judgment, was the 'final settlement' of the contract within the meaning of the act. We understand that the administrative construction of the act has been to the same effect. The regulation of the Treasury Department, as it appears from its circular issued for the information of persons interested in claims for material and labor supplied in the prosecution of work on buildings under the control of that department (Dept. Circ. No. 45, Sept. 12, 1912), is as follows: 'The department treats as the date of final settlement mentioned in said acts' (referring to the acts of 1894 and 1905 supra) 'the date on which the department approved the basis of settlement under such contract recommended by the Supervising Architect, and orders payment accordingly."

Thus it is apparent that clear distinction must be made between the words "final settlement" and "final payment," and that distinction is apparent in the instant case from the discussion supra. The concluding sentence of the court in the case just cited is finally confirmatory of the conclusion here reached, because the bureau in its letter of March 8, 1919, quoted in full supra, said in part:

"Basis of settlement under this contract was approved by the bureau July 30th, 1919."

See, also, American Bonding Co. v. United States, 233 Fed. 364, 147 C. C. A. 300; United States v. Robinson, 214 Fed. 38, 130 C. C. A. 432; Robinson v. United States, 251 Fed. 461, 163 C. C. A. 637; United States v. Illinois Surety Co., 226 Fed. 653, 141 C. C. A. 409.

[3] The defendant contends, further, that the few minor items, referred to in the various letters of the architect, which were not completed or furnished, which were trivial in their nature, and which were taken into consideration by the bureau after July 30, 1918, prevented a complete performance, and hence there could have been no "final settlement." This fact does not alter the case. In some of the authorities cited the same situation arose, and was urged upon the court; but the claims there made were rejected.

Further discussion of the authorities, which are all in general accord, is unnecessary. It is clear that July 30, 1918, was the date on which "final settlement" was fixed administratively. The suit was not, therefore, prematurely brought, and the plea to the jurisdiction is overruled.

Ordered accordingly.