ARNOLD et al. v. UNITED STATES, for Use of W. B. GUIMARIN & CO.

(Circuit Court of Appeals, Fourth Circuit. February 9, 1922.)

No. 1926.

1. **Trial ⚖️3—Trying jurisdiction at same time as merits held not abuse of discretion.**

Where the defendants questioned the jurisdiction of the court in an action on a government contractor's bond, on the ground that six months had not elapsed between the final settlement by the government and the beginning of the suit, as required by Act Aug. 13, 1894, as amended by Act Feb. 24, 1905 (Comp. St. § 6923), it was not an abuse of the trial court's discretion to refuse to try the jurisdictional question before the trial on the merits, but instead to submit to the same jury the question as to the date of settlement, which determined the jurisdictional question and the issues as to defendants' liability.

2. **United States ⚖️67(3)—Time for suit on contractor's bond begins to run when government has determined amount due; "final settlement."**

The time within which a subcontractor can bring suit on a government contractor's bond begins to run at the date of the "final settlement" by the government, which means the date when the contract has been performed, and the government, in its final adjustment, according to administrative methods, has determined what, if any, amount is due thereunder.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Settlement.]

3. **United States ⚖️67(3)—Correspondence relating to small items of contract held not to postpone final settlement, as regards time for suing on bond.**

Correspondence between the government and the contractor, after the government had ascertained the amount due, which related to two small items of the account, and had no material bearing on the final settlement, did not postpone the date of final settlement from which the subcontractor's time to sue on the bond began to run, especially where the government issued the subcontractor a copy of the contract and bond, to which he would not have been entitled unless six months had expired from the final settlement.

4. **United States ⚖️67(3)—Approval by contractor of government's adjustment of amount due is not essential to final settlement as regards action on bond.**

The failure of the general contractor to approve the government's determination of the amount due under the contract does not postpone the date of final settlement, from which the six months which must elapse before the subcontractor can sue on the bond, begins to run.

5. **United States ⚖️67(3)—Statutes authorizing suits on contractor's bonds should be liberally construed.**

Act Aug. 13, 1894, as amended by Act Feb. 24, 1905 (Comp. St. § 6923), permitting subcontractors to bring suit on the bond given by the contractor, is highly remedial, and should be interpreted liberally in favor of the subcontractors.

---

⚖️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. **Appeal and error** ☞1051(3)—**Exception to admission in evidence of contract admitted by pleadings is without merit.**

An exception to the admission in evidence of the contract between plaintiff subcontractor and defendant contractor is without merit, where the due execution of that contract was admitted by the pleadings.

7. **Appeal and error** ☞1051(2)—**Admission of correspondence without proof of signatures held not prejudicial.**

In an action on a government contractor's bond by a subcontractor, the admission in evidence of some correspondence between the parties without proof of the signatures thereto, or of the authority of the persons signing, was not prejudicial to defendants, where the amount claimed under the contract was undisputed and has been unpaid for two years.

8. **Jury** ☞14(1)—**Action on contractor's bond is at law, entitling parties to jury.**

An action by a subcontractor on the bond given by a government contractor is an action at law, in which the parties are entitled to a trial by jury, under Const. Amend. 7, where more than $20 is involved.

9. **United States** ☞67(3)—**All claims against contractor's bond should be tried before one jury.**

In an action by a subcontractor on a government contractor's bond, where other subcontractors and materialmen intervened and sought to recover claims against the contractor, all of the claims of plaintiff and interveners should be submitted at the same time to the same jury, and the trial should be postponed until after the expiration of the time in which claims in intervention can be filed.

10. **Appeal and error** ☞1046(1)—**Properly directed verdict for recovery on contractor's bond not set aside because other claims were not submitted to same jury.**

Where a verdict for plaintiff was properly directed in an action by a subcontractor on a government contractor's bond, it will not be set aside merely because the court failed to submit to the same jury claims of interveners against the same bond.

11. **United States** ☞67(3)—**Form of judgment on contractor's bond held proper.**

In an action by a subcontractor on a government contractor's bond, where the amount of the bond was sufficient to pay the claims of plaintiff and all interveners, a judgment for plaintiff for the full penalty of the bond, in conformity with the state practice making such judgment a forfeiture of the bond, with a provision that judgment should be discharged on the payment to plaintiff of the amount of its claim, was in proper form.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Action by the United States, for the use of W. B. Guimarin & Co., against R. H. Arnold, doing business as the R. H. Arnold Company, and the Globe Indemnity Company, to recover on the bond of a government contractor, in which other subcontractors and materialmen duly filed their petitions of intervention. Judgment for the plaintiff, after trial of his claim alone, and defendants bring error. Judgment modified, in so far as it directed a reference to pass on the claims of the interveners, and, as modified, affirmed.

John I. Cosgrove, of Charleston, S. C., and William Henry White, of Washington, D. C. (Logan & Grace, of Charleston, S. C., and Ellwood P. Morey, of Washington, D. C., on the brief), for plaintiffs in error.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Frank G. Tompkins and M. G. McDonald, both of Columbia, S. C., for defendant in error.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

WADDILL, Circuit Judge. On the 3d of October, 1917, the plaintiff in error R. H. Arnold entered into a contract with the United States to erect and furnish materials for the erection of a certain storehouse in the United States navy yard at Charleston, S. C. At the time of entering into said contract, the Globe Indemnity Company, also plaintiff in error, as surety, obligated itself, in the penalty of $65,190, `for the faithful performance of the contract by the Arnold Company; said contract and bond being severally entered into and executed in pursuance of the act of Congress of the 13th of August, 1894 (28 Stat. c. 280, p. 278), as amended by act of February 24, 1905 (33 Stat. c. 778, p. 811 [Comp. St. § 6923]). On the 4th of October, 1917, the defendant in error, W. B. Guimarin & Co., composed of W. B. Guimarin and E. R. Hayward, copartners trading as W. B. Guimarin & Co., contracted with the Arnold Company as subcontractor to furnish the labor, materials, tools, appliances, and other things required for all plumbing, heating, roofing, drains and fire surface in connection with such building. The work under said contracts was completely performed and final settlement made, determining the amount due by the government.

This suit, in the name of the United States, suing for the benefit of the subcontractors, was instituted to recover the balance due the subcontractor (the general contractor having failed to pay the same) more than six months and within one year after the making of the final settlement as aforesaid, to wit on the 16th day of April, 1920; the United States having instituted no suit during the first period of six months after such settlement. After bringing the suit, sundry other subcontractors and materialmen duly filed their petitions of intervention, as authorized by the act of Congress in question. The defendant filed its answer to the plaintiff's petition, and raised the question of jurisdiction, alleging the suit was prematurely brought—that is to say, within the first six months of the period after settlement of the accounts; the defendant's contention being that the 20th day of September, 1920, and not the 16th of April, 1920, was the true date of the settlement, assuming any final settlement had ever been made under said contract within the meaning of the act.

Plaintiff in error insisted that this question should be determined in advance of the hearing on the merits, either by the court itself, or by submitting the same to the jury. This motion the court overruled, believing it best to hear the testimony thereon, and try the whole case on its merits. The case accordingly went to the jury; the defendant insisting that the jury should be sworn, not only to try the claim as presented by the plaintiffs, but also those of the intervening petitioners, which motion was also overruled. Upon testimony being adduced on the issues thus presented, namely, the question of jurisdiction raised as aforesaid, and upon the merits as to the plaintiff's claim, the defendants moved to direct a verdict, as well upon the merits as upon the question of jurisdiction, which motions the court overruled, and in-

structed the jury to render a verdict in favor of the plaintiffs for the amount due them under their contract, to wit, $7,693.31, with interest from the 19th day of December, 1918. Judgment was duly entered thereon, and the defendants excepted to all action taken, and the case is before this court on writ of error.

The assignments of error, 26 in all, are made to the rulings of the court below. These need not be considered in detail, but grouped according to their subject-matter. They relate chiefly to the question of jurisdiction, which turns upon (1) whether or not a final settlement of the account had been made, when made, and whether the suit was prematurely instituted; (2) whether the court should have impaneled a jury to try the plaintiff's claim alone, or together with the other intervening petitioners; (3) to the ruling of the court in admitting in evidence the contracts in suit, and sundry correspondence had in connection therewith, as well between the parties to the contracts as with government officials; (4) whether there was error upon rendering its judgment upon the verdict in the name of the United States for the full penalty of the bond, and in directing the petitioners' claims to be referred to a master for determination; and (5) whether the court erred in the form of its judgment entered upon the verdict. These will be disposed of in the order named.

[1] First. Was there error in the action of the court in declining preliminarily to dispose of the question of jurisdiction? We think not, certainly upon the pleadings. The defendants appeared generally, filed their answers, and raised the jurisdictional question along with other defenses in the case. The court acted entirely within its discretion, and wisely, in this matter, after hearing all the testimony, and upon the disposition of the case on its merits. The issue as to jurisdiction depended on whether the suit was prematurely instituted or not. From the plaintiff's standpoint, the final settlement had been ascertained and made as of the 16th day of April, 1920. The government having declined to bring suit within the first 6 months period after that date, the plaintiffs procured properly authenticated copies of the contract, bond, and settlement of accounts from the government, and instituted this suit on the 20th of November, 1920, 7 months after the final settlement, and some 30 days after the right to sue had become effective, upon the expiration of the period in which the government had the sole right to sue.

[2] The date at which the statute begins to run—that is, the 12 months period within which suit must be instituted—depends upon when there is, or what constitutes, final settlement under a contract between the government and a general contractor. Mr. Justice Hughes, in Illinois Surety Co. v. United States, 240 U. S. 214, 36 Sup. Ct. 321, 60 L. Ed. 609, has made this clear, and to that case, and the authorities therein cited, reference is especially made. Final settlement means when the contract has been performed, and the government in its final adjustment and settlement, according to administrative methods, has determined what, if any, amount, is due thereunder.

[3] The issue is sharply drawn in this case as to when this action was taken by the government, whether on the 16th of April, or the 20th

of September, 1920. The District Court held that the former, and not the latter, was the date of final settlement, in which we concur. It is true that a letter was written on the subject as late as 'the 20th of September; but this had relation to the two small items of the account, and had no material bearing on the final settlement, which had been determined upon as of April, 1920. Not only do the facts fully sustain this finding by the trial court as to the date of settlement, but we think that it is significant that the government, on proper application being made to it, furnished the plaintiff with a copy of the contract and bond in question, in order that suit might be brought, if so desired, the government having taken no action. If the 20th of September, and not April, 1920, was the correct date of settlement, the plaintiff would not have been entitled to receive these copies.

[4] Defendants seek to avoid the effect of the settlement on the date in question, claiming that, although the work had been completed, the defendants had not acquiesced in the settlement. This position cannot be maintained. It is the ascertainment and determination by the proper governmental authorities of the amount due under the contract, that enables the government on the one hand, and subcontractors on the other, to assert their rights under the bond of the general contractor, and these rights cannot be held in abeyance by the mere failure of the general contractor to approve of what the government has done, or concur in the result thereof. Authorities are quite conclusive on this subject. Illinois Surety Co. v. United States, 240 U. S. 214, 36 Sup. Ct. 321, 60 L. Ed. 609, supra; United States v. Winkler (C. C.) 162 Fed. 401; United States v. Bailey (D. C.) 207 Fed. 783; United States v. Robinson, 214 Fed. 38, 130 C. C. A. 434; Robinson v. United States, 251 Fed. 461, 163 C. C. A. 637; United States v. Title Guaranty Co., 254 Fed. 958, 166 C. C. A. 320.

[5] This position is untenable for another reason. It is contrary to the very spirit and purpose of the acts in question, which are highly remedial in character, and intended to afford a prompt remedy to materialmen and laborers under the bond of the general contractor, and should be interpreted liberally in favor of the subcontractors. U. S. F. & G. Co. v. Golden, etc., 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242; U. S. to Use of Hill v. American Surety Co., 200 U. S. 197, 26 Sup. Ct. 168, 50 L. Ed. 437; Mankin v. United States, 215 U. S. 533, 30 Sup. Ct. 174, 54 L. Ed. 315; Alexander Bryant & Co. v. N. Y. Steamfitting Co., 235 U. S. 327, 35 Sup. Ct. 108, 59 L. Ed. 253; Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 Sup. Ct. 614, 61 L. Ed. 1206. To maintain the position of the general contractor in this respect would be entirely subversive of the interests alike of the government and of the subcontractors, and largely destroy the benefits sought to be attained by the act.

[6, 7] Second. A careful examination of the several documents offered in evidence, and the correspondence in connection therewith, as well between the contractor and subcontractor and government officials, convinces us that these exceptions, one and all, are without merit. To illustrate: One relates to the signing of the contract with the subcontractor, when its due execution is admitted in the pleadings; and while in some instances the introduction of letters and papers of the charac-

ter mentioned might be subject to exception, or, in proper cases, call for proof as to the execution of the same, or for the authority to sign such letters still, in this case, where they consist mainly of correspondence between the parties, of and concerning the very subject-matter of this suit, with the amount claimed undisputed and unpaid 2 years, it does not appear at least that any possible prejudice could have arisen from the admission in evidence and a full consideration of all the papers objected to.

[8] Third. Was there error in the action of the court in according to the plaintiffs singly a jury trial, excluding the cases of the several petitioners, and in entering judgment directing that the latter claims be ascertained by a master? Whatever may have been the belief originally, on the part of some, as to whether action on a contractor's bond of the character under consideration here was a proceeding at law or in equity, it is now and has long since been definitely held to be an action at law. Illinois Surety Co. v. The United States, 240 U. S. 214, 223, 36 Sup. Ct. 321, 60 L. Ed. 609, supra. In actions at law, the right to trial by jury follows, it being a right granted by the Constitution of the United States, where more than $20 is involved. Const. Amend. 7.

[9] The sole question, therefore, on this exception, is whether there should have been a single jury trial of the claims of the plaintiffs and the several petitioners jointly, instead of that of the plaintiffs alone. We think it clear that a jury should have been impaneled to try and dispose on a single trial of all of the petitioners' claims, as well as that of the plaintiffs; the statutory period in which petitions could be filed having expired. It may be said, in passing, that except in most unusual cases a jury trial should not be had, in a case like the present, until the expiration of the period in which petitions may be filed, when a single trial, covering all the claims, should be had. The recent case of Miller v. American Bonding Co., a decision of the Supreme Court, decided December 12, 1921, not yet [officially] reported, 256 U. S. ——, 42 Sup. Ct. 98, 66 L. Ed. ——, makes clear what should be done here, and the course of procedure in like cases.

[10] Fourth. Considering the action to be taken upon the judgment in this case, it seems to us, the same having been fully tried so far as the plaintiffs are concerned, without request from the petitioners to be heard, or objection on their part as to the course pursued, that the action of the lower court should not be disturbed in its ascertainment of the amount due plaintiffs. The court instructed the jury to find for the plaintiffs, and properly so, as there was no testimony questioning the validity and correctness of their claim, and the judgment should be treated as that of a judgment on the bond, along with other petitioners, when judgments are rendered in their favor.

The judgment of the District Court, directing the reference to a master to pass upon the claims of the several petitioners, should be modified, and a jury trial awarded, to determine in a single trial the amounts due the several petitioners.

[11] Fifth. Was there error in the form of the judgment by the lower court, in that the same was entered in favor of the United States, and for the full amount of the penal sum of the bond sued on? The

court's idea, manifestly, in entering this judgment for the full penalty, was that, under South Carolina practice, such action constituted a forfeiture of the bond, and enabled persons in the position of the plaintiffs and the petitioners to come in and assert their claims, the aggregate not to exceed the amount of the bond, so far as the surety was concerned. The record in this case is a little confusing, in that the judgment entered on July 7, 1921, is not in the exact terms of the order of the judgment of 18th of June, 1921.

It is evident, upon consideration of the order of judgment and judgment thereon, that the court held, and meant to hold, that the contract between R. H. Arnold & Co. and the United States, dated the 3d of October, 1917, referred to in the proceedings, had been fully performed, and final settlement made on the 16th day of April, 1920, and that there was due to the plaintiffs from the general contractor the sum of $7,693.31, with interest from December 19, 1918, amounting in all to $9,035.59, and that, suit having been instituted upon the bond in the name of the United States, suing for the use of W. B. Guimarin & Co., judgment should be entered in favor of the United States for the sum of $65,190, the penal sum of the bond referred to, to be discharged by the payment to the said Guimarin & Co. of $7,693.31, with interest from the 19th of December, 1918, until paid, together with costs, $54.11; it appearing that the plaintiffs' and petitioners' claims combined do not exceed the penal sum of said bond.

We think the judgment as thus understood is correct and should be so modified, and that the several petitioners, upon ascertainment of the amounts respectively due them, should be entitled to like judgments; the total judgments, including that of the plaintiffs herein, not to exceed the penalty of the bond. The decision of the lower court, as herein modified, will be approved and affirmed.

Modified and affirmed.