STATE et al., for Use and Benefit of McBRIDE et al., v. CAMPBELL BLDG. CO. et al. (MELVILLE et al., Interveners).

No. 5962. Decided March 7, 1938. (77 P. [2d] 341.)

328

*Cheney, Jensen, Marr & Wilkins,* of Salt Lake City, for appellant.

*Cline, Wilson & Cline,* of Milford, and *Allen T. Sanford, Ball & Musser, J. Grant Iverson, Dickson, Ellis, Parsons & McCrea, Skeen & Skeen,* and *George N. Lawrence,* all of Salt Lake City, for respondents.

LARSON, Justice.

This is a suit by a materialman, McBride Lumber Company, who furnished materials to defendant Campbell Building Company for its use in constructing and improving a state highway in Millard county under a contract with the State Road Commission. The contractor gave a bond to the state of Utah with the American Surety Company of

New York, codefendant, as surety, as required by statute. The interveners are other creditors of the contractor, who by order of court filed the complaints in intervention pursuant to the statute. To the complaint of plaintiff, as well as to each complaint in intervention, the defendants filed answer consisting of a denial that the amount claimed was due and owing, and a plea to the jurisdiction on the ground that the suit was prematurely filed, and therein it is alleged that "* * * these defendants deny that there has been any final settlement between the contractor and the State Road Commission, and deny that there has been any expiration of six months after the final settlement, because there has been no final settlement between the contractor and the State Road Commission."

As to one intervener, George Bushnell, they pleaded as further defense an accord and satisfaction. By agreement of the parties, the cause was set for hearing on the defendants' plea that the action was prematurely brought, all parties desiring a determination on that issue before bringing witnesses for the trial of the other issues on the merits. After hearing, the court held against defendants on this plea and fixed a time for further hearing on the merits of the claims. Defendants then sought a writ of prohibition from this court on a claim that the court was acting in excess of jurisdiction because the suit was prematurely brought. The writ was denied December 26, 1936. *Campbell Building Co.* v. *District Court of Millard County,* 90 Utah 552, 63 P. 2d 255.

Twenty-two errors are assigned and are grouped by appellant under the following propositions: (1) The trial court was without jurisdiction because the evidence affirmatively shows there has been no final settlement. (2) Plaintiffs and interveners agreed payment would not be due until actual receipt by Campbell Building Company of the contract price from the State Road Commission. (3) The trial court erred in refusing to permit the filing of amended answer of Campbell Building Company to the complaint in

intervention of Sumsion. (4) There was an accord and satisfaction as to the claim of George Bushnell.

(1) The action is prosecuted under the provisions of chapter 1, title 17, R. S. Utah 1933, which chapter, as far as material here, provides that a contractor on public works must furnish to the state as obligee a bond, with proper surety, conditioned for the faithful performance of the contract and the payment of all claims for materials furnished and labor done in prosecuting the work. The statute then provides:

"Any person who has furnished labor or materials for * * * any public * * * work, * * * payment for which has not been made, may intervene in any action commenced by the obligee or other person on the bond of the contractor and have his claim adjudicated therein. * * * If no action is brought by the obligee within six months from the completion and final settlement, or abandonment of the contract, then any person who has supplied labor or materials shall, upon application therefor, be furnished with a certified copy of the original contract and bond, upon which he shall have a right of action, and may sue the contractor and his surety, for his own benefit, in the name of the obligee, * * * provided, that where such action is instituted by any such creditor it shall not be commenced until after the complete performance of such contract and final settlement thereof, or abandonment thereof, and shall be commenced within one year thereafter and not later." Rev. St. 1933, 17-1-2.

The pertinent provisions of the foregoing sections are (a) that an action will not lie against the surety until after completion of the work and final settlement, or abandonment of the contract; (b) only the obligee can commence an action against the surety within the first six months after completion and final settlement or abandonment of the contract, thus securing to the obligee a priority of its claim and a six months' period in which to ascertain whether it has a claim against the contractor which it wishes to assert and the amount thereof; (c) other creditors of the contractor have a six-month period only, in which to commence an action on the bond, which period begins six months after

final settlement, or abandonment, of the contract, and terminates one year after that event. *Campbell Building Co. v. District Court of Millard County,* 90 Utah 552, 63 P. 2d 255; *Board of Education v. Southern Surety Co.,* 76 Utah 63, 287 P. 332; *United States v. Arnold,* D. C., 268 F. 130; *United States Fidelity & Guar. Co. v. United States,* 54 App. D. C. 342, 298 F. 365; *London & Lancashire Indemnity Co. v. Smoot,* 52 App. D. C. 378, 287 F. 952.

Final settlement within the statute does not mean final payment or final disposition of all matters under the contract. The time of final settlement is the time when the obligee in the bond, the state, has administratively determined that performance under the contract has been made by the contractor, and the obligee has determined the amount due under the contract; that is, the obligee has determined whether or not it has any claims to assert against the surety because of the contractor's failure to perform according to his obligations under the contract. *United States v. Robinson,* 2 Cir., 214 F. 38; *Illinois Surety Co. v. United States,* 240 U. S. 214, 36 S. Ct. 321, 60 L. Ed. 609; *United States v. Arnold,* D. C., 268 F. 130; *Arnold v. United States,* 4 Cir., 280 F. 338; *Antrim Lumber Co. v. Hannan,* 8 Cir., 18 F. 2d 548.

It may aid an understanding to bear in mind that this statute deals only with actions against the surety. Claims of creditors against the contractor are not affected by the statute. We opine such claims may be asserted at any time within the general statute of limitations. It is only when it is sought to hold the surety—only when recovery is to be made under the bond—that the provisions of the statute come into play. The restrictions are two-fold: To give the obligee a priority to determine and protect any claim it may have, and to fix a one year limitation on the surety's liability to other creditors. When, therefore, the obligee has had an opportunity to determine if it has any claims against the surety, and assert the same, there are no good reasons why other creditors of the con-

tractor should not be permitted to enforce their claims; nor is there any good reason why the surety should not be permitted to have any claims, for which it might be liable, determined and settled promptly, so as to be rid of the business. The statute is not for the benefit of the contractor but for the benefit of the obligee, creditors, and surety. When, therefore, the obligee has determined in its regular administrative order what the contractor owes it, that is, what claims it may have against the surety, it must promptly assert the same so as not to unreasonably delay other creditors. It has six months in which to take such action. When it determines the amount it considers it owes the contractor, it has, of course, determined and deducted any sum the contractor owes it, so, knowing what claims it may have, the six months' period of priority of right to sue as against other creditors begins to run. Such period of six months—a special privilege—for the benefit of the obligee, and against a suit by a creditor, starts running for the benefit of the creditor as soon as the obligee has determined what, if any, claims it has against the contractor on the bond. The time of such determination is therefore the time of final settlement under the statute.

Does the record justify a finding that such determination had been made six months prior to the commencement of this action? All the evidence on this matter is supplied by the testimony of K. C. Wright, chief engineer for the State Road Commission, and George Vories, president and general manager of the defendant Campbell Building Company. Wright testified:

"Q. State please if you know of your own knowledge whether this project or job known as Federal Aid Project 68-B was finally accepted by the State Road Commission? A. Yes.

"Q. Well, do you have the date when the project was finally accepted by the State Road Commission? A. Yes.

"Q. Can you give it to me, please? A. May 3, 1933.

"Q. Do you know, Mr. Wright, whether or not a final estimate was ever compiled by the State Road Commission? A. Yes.

"Q. And can you give me the date? A. The final estimate was made— And it was submitted to this office by the resident engineer in charge of construction on May 29, 1933. I ought to say further that the estimate was finally prepared in this office on June 9, 1933.

"Q. Now, Mr. Wright, when the State Road Commission accepted this project, can you state whether or not it was accepted without the State Road Commission making any further claim against the contractor, that is, for unfinished work or for damages for delays, or anything of that sort? A. Yes, there was.

"Q. You mean by that that you had no further claim or claims against the contractor? A. None.

"Q. And that estimate as shown by your books was the balance which the Road Commission then claimed that it owed to the Campbell Building Company on this contract? A. Yes.

"Mr. Cline: I would like the reporter to mark this as Plaintiff's Exhibit A, consisting of two sheets. We might mark it Exhibit A and A-1.

"Q. (By Mr. Cline) Mr. Wright, you have testified just a moment ago to a final estimate sheet, and I will ask you whether the sheets marked Plaintiff's Exhibit A and A-1 were the sheets of which you were testifying? A. Yes.

"Q. Now, one other question. When you compiled this final estimate, state whether or not you determined, in so far as the State Road Commission was concerned, the final balance or settlement which the State Road Commission stated or claimed was due from it to the Campbell Building Company? A. Yes.

"Q. And state whether or not the figures as represented here in the balance was the final settlement in so far as the State Road Commission was concerned? A. Yes."

Such is the testimony, admitted without objection, and its accuracy is not questioned. To offset the same, defendants offered the testimony of Vories. He testified that after he received Exhibits A and A-1, the final estimate sheets, he contacted the chief engineer for the commission, claiming more money due the Campbell Building Company than the state had allowed them on the final estimate; that he would not accept as correct the state's final estimate; that he claimed the company was entitled to much more; that after some argument, the sheets which had been marked

"final estimate," were blue penciled to read "6 partial esti-mate"; that the road commission never admitted owing more than the amount shown on the final estimate sheet of June 9, 1933; that the building company received a check from the state for $7,131.48, which was all the commission admitted owing over and above the sum of $7,297.80, the 10 per cent of the total contract, retained by the state until the contractor furnished an affidavit of payment of all labor and material bills; that such affidavit was never furnished; that after May 9, 1933, the state made no claims against the contractor for damages for defective work, un-finished work, or any claims under the contract; that the building company sued the road commission for $43,000 and recovered only two small items amounting to $60.65, which had been overlooked in the final estimate made by the state.

Wright, the engineer, testified that after the building company refused to furnish the affidavit showing all labor and material bills paid, "for bookkeeping purposes," the sheets marked "final estimate" were changed to read "6 partial estimate" so the same would not be passed to the state auditor for payment of the 10 per cent re-tained until the affidavit was furnished. That is the record. It is defendants' contention that since the final estimate was not accepted by the contractor it was not a final settlement; and since it later developed that the esti-mate was in error $60.65, as to the exact amount due the contractor, it was not a *final* settlement. Neither of these is tenable.

"Final settlement" under the statute is the determination by the obligee as to whether it has any claims against the contractor, and what it considers it owes the contractor. This could not be affected by the fact that the contractor may not agree with the determination. The most essential thing is whether the obligee asserts a right to recover under the bond on a claim against the con-tractor, except as such amount may affect the claim, if any,

it asserts against the surety under the bond. The question as to whether there has been a *"final settlement"* is not affected by the acceptance or rejection of the statement by the contractor. *Arnold* v. *United States*, 5 Cir., 280 F. 338; *Illinois Surety Co.* v. *United States*, 240 U. S. 214, 36 S. Ct. 321, 60 L. Ed. 609; *United States* v. *Winkler*, C. C., 162 F. 397, 401; *United States* v. *Bailey*, D. C., 207 F. 782, 783; *Robinson* v. *United States*, 2 Cir., 251 F. 461, 163 C. C. A. 637; *United States* v. *Title Guaranty Co.*, 7 Cir., 254 F. 958, 166 C. C. A. 320. Nor is it affected by the fact that there may be some dispute as to the items or some of them thereafter found due to the contractor (and not *from* him) from the obligee. *Arnold* v. *United States*, supra; *Illinois Surety Co.* v. *U. S.*, 240 U. S. 214, 36 S. Ct. 321, 60 L. Ed. 609. Bear in mind that the forbearance provided in the statute is for the priority and protection of claims of the obligee against the surety, and starts running for the benefit of the creditors.

This brings us to question (2). Was time of payment by the building company of its obligations to the interveners conditioned upon the actual receipt by it of the moneys from the state? This question relates to the claim of plaintiff and the interveners Structural Steel & Forge Company and J. M. Sumsion. The trial court, in a finding of fact, answered this question adversely to the defendants. This being a law case, if there is evidence in the record reasonably tending to sustain the finding of the trial court, we will not weigh the evidence or disturb the finding. As to the claims of plaintiff and of the Structural Steel & Forge Company, while the evidence is all parole and in conflict, we think there is ample evidence to sustain the court's findings against defendants.

As to the Sumsion claim, defendants assert that the written contract with Sumsion, a subcontractor, expressly provides that payment is not to be made until final payment has been received from the state by the building company. The statement is the final paragraph of a letter from the

building company confirming an oral agreement, and admitted to be correct by Sumsion. It reads:

"Payments will be made monthly up to 90% of the value of the work completed and allowed by the Engineer, as and when we receive our payments from the State. Final payment will be made on final estimate of the Engineer and when final payment is made to us by the State for the gravel and subbase work."

This clearly provides that as the building company receives payment from the state on engineer's monthly estimates, Sumsion is to be paid 90 per cent of the total value allowance by the engineer, in such estimate, for gravel and subbase material. There is thus held back against Sumsion, who was not a materialman but a subcontractor, 10 per cent of the estimate (the same as against the general contractor) to protect against failure to complete the contract. From month to month, as the building company received payments from the state, it made payments to Sumsion on account, but never the full 90 per cent of the amount shown by the engineer's estimate to represent the materials delivered on the jobs by Sumsion. Part of the money thus conceded due Sumsion was each month retained by the building company for its own uses. The trial court gave judgment to Sumsion for these amounts withheld, with interest thereon from the date the money was received by the building company. This was not error and was in direct accord with the terms of the contract.

But as to the final payment, representing the amount due under the final monthly estimate and the 10 per cent regularly withheld by the state, it is contended that such sum was not payable until the building company received its last and final payment from the state. This contention by appellant is specious. Such condition, as pointed out by Mr. Chief Justice Folland in *Campbell Building Co.* v. *District Court of Millard County,* 90 Utah 552, 63 P. 2d 255, would result in an impasse, because the building company could not obtain final payment from the state

until it had paid Sumsion and Sumsion was not entitled to payment until the building company had been paid in full. And the provision of the contract does not so provide. The provision is: *"Final payment will be made on final estimate of the Engineer,* and when *final payment is made to us* by the State *for the gravel and subbase work."* (Italics added.) This can only mean that final payment is to be made to Sumsion when he has completed his work, has performed in full, as shown by the engineer's estimate, so payment can be made by the state for all gravel and subbase work. When the engineer certifies in his estimate that the gravel hauling and subbase work is all done and completed to the satisfaction of the state, so the state can have no claims back against the contractor for that work, and such estimate is paid to the building company, then Sumsion is to be paid his final payment in full. That it was not contemplated that Sumsion should wait for his money until the building company actually received its final payment from the state is further evidenced by the language used by the company itself in the contract: "Final payment * * * will be made * * * when final payment is made to us by the state *for the gravel and subbase work."* Had the statement stopped with the work *"state,"* it would be color to appellant's claim, but the company itself added the phrase *"for the gravel and subbase work."* We cannot assume this was meaningless. It can only indicate that Sumsion was to be paid when all the gravel and subbase work was done to the approval of the state. The ruling and findings of the trial court on this matter are not in error.

(3) Was there an accord and satisfaction on the claim of George Bushnell? The evidence consists of a stipulation of some facts, a letter from Bushnell to the company, and a check issued by the company to Bushnell, and the letter of transmittal with the check. The stipulation was, in effect, that from September 16, 1932, until April 26, 1933 (Abs. 135-8), Bushnell rented to the company an automobile and trailer for its use on the project involved in the suit, and

was to be paid a reasonable value for such use; that $226 was the reasonable value; that during this time Bushnell was employed in other services for the company; on May 26th, Bushnell wrote the company a letter complaining about nonsettlement of its accounts, in which he said, inter alia, "The miles I went on your job was 17,000 and if you don't think it worth anything I would like to know it." (Abs. 216.) The letter of transmittal and the indorsements on the check follow:

"Dear Sir: We are enclosing herewith check for $25.95 which is payment in full for all labor performed and materials furnished by you on the above named project. This pays you in accordance with the time you turned in to us the last time you were in our office.
"Yours very truly,
"Campbell Building Co. of Utah."

"A check is attached to it, and dated May 10, 1933, payable to the order of George L. Bushnell, $25.95. In the corner this appears: 'Apr. 17 to Apr. 27. 11 days at $3.30, $36.30. Paid California Western State Life Ins. Co. $10.35. Total $25.95. Payment in full on F. A. P. No. 68-B. Dog Valley—Kanosh.' "

"On the back is the endorsement:

" 'Endorsement of this draft constitutes acceptance by the payee of full payment for all labor performed or materials furnished by him on F. A. P. No. 68-B, and hereby certifies that all bills for materials, board, lodging, feed, etc., have been fully paid by him and that he has no outstanding bills of any nature which are chargeable against Campbell Building Company of Utah, or this project. Signed George L. Bushnell.' "

"It shows by the stamps it was paid."

That is the whole record. The following are the pertinent facts: Bushnell had a claim for rent of car and trailer; he also had a claim for time as a labor hand; the letter of transmittal indicates the check was for *time turned in;* and not for car rent; the indorsement on the front of the check shows it was for time from "Apr. 17 to Apr. 27, 11 days at $3.30." The indorsement on the back does not indicate it was for car rental. Taken in connection with the letter of transmittal and the notation on the

face of the check, it clearly indicates that the check was full payment only of the labor charge or account, and had no reference to the account for rental of the car and trailer. There is no evidence of a dispute as to the genuineness or amount of the claim, upon which to found an accord and satisfaction, under the theory that such is established by an indorsement of a check. *Ashton* v. *Skeen,* 85 Utah 489, 39 P. 2d 1073. See, also, annotation 34 A. L. R. 1035; 75 A. L. R. 905. This assignment must fail.

(4) Did the trial court err in refusing to permit defendant Campbell Building Company to file an amended answer to the complaint in intervention of J. M. Sumsion? After Sumsion filed his complaint in intervention, defendants filed answer putting in issue only three matters: A difference of $41.99 in the price of the work done by Sumsion; a plea that under the contract Sumsion was not to be paid until the building company received its final payment from the state, and so there was nothing due claimant; and a plea to the jurisdiction that the suit was prematurely brought. The trial court first took evidence on the issue as to whether the suit was prematurely brought, and having determined that issue against defendants, in due course set the case for trial upon the merits as to the claims of plaintiff and the interveners.

When the matter was called for trial, the building company tendered and asked leave to file an amended answer to the complaint in intervention of J. M. Sumsion. Counsel for Sumsion objected to the filing, but the grounds therefor do not appear in the record. After some argument, the court made the following order:

"It appears to the court that the additional matters set out in the amended answer of the Campbell Building Company to the complaint in intervention of J. M. Sumsion does bring in new issues that should have been pleaded long before, this case having been set for trial nearly a month, or more than a month before this term of court, and it having been previously set for trial. It appears to the court that the objection should be sustained. The court therefore denies the request to file the amended answer."

The ruling is assigned as error on the precise ground on which the court made the ruling, that it introduces new issues which should have been tried. The complaint in intervention was filed June 5, 1934. At that time the building company knew all the matters it sets up in the proposed amended answer. On May 7, 1935, the building company filed its original answer. Not until March 22, 1937, the morning the cause was called for trial, and more than a month after the cause was set for trial, did the building company serve or propose or give notice of its intention to amend or to raise new issues, although it had known since the action was commenced of the matters it sought to set out in its amended answer. We may add that the company does not pray for any relief under the amended answer not asked under the original answer; no set-off is prayed for; no judgment on counterclaim; and no affirmative relief is asked because of, or founded upon, the new matters alleged in the proposed amended answer. The writer and Mr. Justice MOFFAT are of opinion that the court should have permitted the filing of the amended answer, but the other members of the court are of opinion that the ruling was on a matter within the discretion of the court and the record does not show an abuse of such discretion. The ruling, therefore, will not be disturbed.

Finding no error in the record, the judgment is affirmed. Costs to respondents.

FOLLAND, C. J., and HANSON and MOFFAT, JJ., concur.

WOLFE, Justice.

I concur. I do not interpret the opinion as laying down any rule by implication or otherwise that money paid to a contractor on estimates by the State Road Commission are in any sense to be considered as paid on behalf of or for any subcontractor or as a payment for the work of such subcontractor. The estimates upon which payment is made

are simply estimates of what has been done under the contract between the contractor and State Road Commission without regard to what has been done by subcontractors or supplied by materialmen or what is owing to them by the contractor. Payment is made accordingly after deducting 10 per cent to be reserved as a final payment to take care of claims by the road commission. But as between the Campbell Building Company and Sumsion, the stipulation that final payment should be made to the latter "when the final payment is made to us by the State for the gravel and subbase work," must be interpreted to mean that in contemplation of these two parties the final payment for such work at the latest was to be considered as having been made by the state at that time when the 90 per cent was paid to the Campbell Building Company and that none of it was part of the 10 per cent reserved by the state.