THE WATERBURY TOOL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109880. Promulgated October 22, 1943.

*Edwin L. Gluck, Esq.*, for the petitioner.
*Walt Mandry, Esq.*, for the respondent.

906

## OPINION.

DISNEY, *Judge*: The petitioner and the Navy Department in 1935 entered into a contract under the "Vinson Act" of March 27, 1934. That act in sum provided that contracts entered into by the Navy Department for vessels, etc., should contain provisions by which "the

contractor" should agree, *inter alia*, to make a report upon "completion of the contract," to the Secretary of the Navy, and to pay into the Treasury profit above 10 percent of the total contract price; also that if such payment was not voluntarily made, the Secretary of the Treasury might collect it under the usual methods employed under the internal revenue laws to collect Federal income taxes. After its amendment on June 25, 1936, the Vinson Act also provided that all provisions of law, including penalties applicable with respect to the taxes imposed by Title I of the Revenue Act of 1934, should be applicable with respect to the assessment, collection, or payment of excess profits to the Treasury, as provided by the Vinson Act. The amendment in 1936 provided for offset of profit from one contract by loss sustained on another "completed by the particular contractor * * *" in the same year. Neither act defined the phrase "completion of the contract," or "completed." The petitioner suffered a loss on the contract entered into in 1935, but made a profit on another entered into in 1937, which was completed in 1938. It contends that it likewise completed the 1935 contract in 1938 and may therefore, under the 1936 amendment, offset the loss therefrom against the profit made on the 1937 contract. Its contention is, in substance, first, that the 1935 contract was "completed" in 1938 because the contract itself provided that "for the purposes of the Act, the contract should be considered complete upon final payment," because the contractual language is controlling, and because in 1938 it received, of the total contract price, its last payment of about $17,000, until then withheld by the Navy Department because of a liquidated damages provision in the contract, and $1,000 not earlier paid because of error; and because this constituted final payment under the contract. Secondly, the petitioner contends that the 1935 contract was completed in 1938 because the contract contained a clause guaranteeing that equipment sold would give satisfactory service for two years, and in 1938 it complied with such guaranty by delivery of certain equipment to replace defective equipment previously delivered. Thirdly, the petitioner takes the view that the respondent is estopped to deny completion of contract in 1938. The respondent takes the view that the contract was completed in 1937 when the materials contracted for were delivered and the principal contract price was paid, that is, all except the amount withheld for liquidated damages and the $1,000 because of error.

1. The petitioner agrees upon brief that this case is no different in principle from that of *Douglas Aircraft Co.*, 46 B. T. A. 1025, except for the fact that in that case the period of guaranty had expired prior to the taxable year and no replacements were made, whereas here replacements were made under the guaranty provision within the taxable year; and except for the plea of estoppel set up in this matter. We are strongly urged, however, that we were in error in our conclusion

in the *Douglas Aircraft Co.* case that final payment under the contract was not decisive of the date of completion.

In the light of the earnestness and zeal with which this case is argued, we have carefully reviewed that case and have reexamined the whole question. After doing so, we still have no doubt that "completion of the contract" is a statutory term in a statute imposing liability for the profit involved, and that the parties could not by contract determine completion to be final payment. In addition to the reasons considered in our opinion in the *Douglas Aircraft Co.* case on this particular point, we point out that assuming the contractual nature of the liability under the Vinson Act to pay the excess profit voluntarily into the Treasury, that in this case such payment was not a voluntary matter and that, as provided by the Vinson Act, it was necessary for the Treasury Department to proceed to collect *in invitum*. A careful examination of the language of section 3 (b) of the Vinson Act reveals that the proviso as to collection in case of no voluntary payment, although it follows language descriptive of the necessary contents of the contract, does not make any reference to the contract, but is an unequivocal provision, that if "such amount," that is the excess above 10 percent, is not voluntarily paid, it shall be collected by the Secretary of the Treasury. Therefore, as we pointed out in the *Douglas Aircraft Co.* case, referring to I. T. 3284 (C. B. 1939–1, p. 407) to the same effect, a contractual provision that the excess above 10 percent profit be paid to the Treasury, is in nowise prerequisite to collection by the Treasury if payment be not voluntarily made. I. T. 3284, in part, says: "It is commonly said that existing laws form part of a contract and are incorporated in it." In other words, the provision is statutory, not contractual, and interpretation of "completion of contract" therein is not for the parties. Neither in the text nor in the intendment of the act are we able to discern that the duty or power of the Secretary of the Treasury to collect the profits is subject to inhibition by the form of the contract made. The petitioner argues, in substance, that the Vinson Act did not create a tax liability, so that the whole matter is contractual. The question is not whether it is a taxing act, but whether it imposed a liability. In the *Douglas Aircraft Co.* case, we repeated our conclusion that the act imposed the liability for the excess profits. We adhere to that view; also to the view that the parties to the contract may not by the adoption of a definition of an undefined statutory expression determine the matter so as to relieve us of our duty to interpret the statute. The petitioner urges strongly that our conclusion in the *Douglas Aircraft Co.* case fails to give weight to the action of the Navy Department; that is, that the Navy Department having adopted, by entering into the contract, the definition of completion

of the contract therein contained, we should not fail to give controlling weight to that fact. In our view, however, the Secretary of the Navy, by entering into the contract in question here, did not furnish executive construction to the effect, as petitioner contends, that completion of the contract meant final payment; for, as pointed out in the *Douglas Aircraft Co.* case, and in *Foster Wheeler Corporation*, 42 B. T. A. 36, the statute provides, not that the Secretary of the Treasury shall agree to the requisite provisions, but that the *contractor* shall so agree; and the contract here involved recites, not that the Secretary of the Navy agrees, but that "the Contractor hereby agrees * * * (g) For the purpose of this act the contract shall be considered complete upon final payment." The language of neither the statute nor the contract justifies the conclusion that by executing such a contract the Secretary of the Navy furnished any executive construction to support the petitioner's view.

Nor has the Secretary of the Treasury furnished such executive interpretation. The petitioner's contention is based upon Treasury Decision 4723, which reads as follows:

* * * *With the exception of those contracts which provide a method for determining the date of completion,* the date of delivery of the vessel, aircraft or portion thereof covered by the contract or subcontract shall be considered the date of completion of the contract or subcontract unless otherwise determined by the Secretary of the Navy and the Secretary of the Treasury or their duly authorized representatives. * * * [Italics supplied.]

The substance of the petitioner's argument is that by the promulgation of this Treasury decision, the Secretary of the Treasury, although defining date of completion as date of delivery of the vessel, etc., covered by the contract, by the use of the words "With the exception of those contracts which provide a method for determining the date of completion," intended to interpret the statute, in such case, as meaning in substance that the date of completion of the contract should mean what the parties to the contract should define it to mean. This is not the language of the Treasury decision. The fact is that it defines date of completion as date of delivery, but makes an exception to that rule. In our opinion, the Treasury decision is not so sufficiently definite and certain as to support the petitioner's argument. The text does not support it; and to us the inference desired by the petitioner is anything but clear. The respondent upon brief states that he has always held that date of delivery of the material governs the date of completion of the contract, regardless of any clause in the contract purporting to extend the time of completion until the date of final payment; further, that the Treasury Department has never given any official recognition to the propriety of incorporating such a clause in the contract. T. D. 4723 was the subject of I. T. 3275, apparently about April 24, 1939. Therein it is held that date of delivery consti-

tutes completion of the contract, even though the contract contains a clause providing that for the purpose of the act the contract shall be considered complete upon final payment. An opinion of the Acting Comptroller General of the United States to the Secretary of the Navy on July 25, 1938 (18 Comp. Gen. 84), is relied upon and quoted as follows:

* * * There appears no reason to suppose that the Congress used the term "completion of the contract" in any other than its usual sense of completion by the contractor of the contract work, whereupon the cost of performance could be ascertained. * * * the matter is governed by the time the particular contracting party completes the contract work, and not by the time, possibly much later, when final payment is made by the Government.

* * * Thus the administrative regulations under the Act define "completion of the contract" for the purposes of the legislation as meaning primarily "the date of delivery of the vessel, aircraft, or portion thereof covered by the contract or subcontract," which is generally tantamount to completion by the contractor of the contract work. Regulations no more than contracts may modify a statute, but where, as here, the regulations appear to set forth the correct interpretation of the statutory purpose, there would be no authority to vary that purpose by contract or by an administrative determination otherwise in individual cases. That is, * * * no administrative action is authorized which purports to extend the time * * * to a later and different date or which puts the obligation on a different basis, and any purported agreement or administrative determination to such effect must be viewed as invalid because contrary to the statute. * * *

Thus it appears that both the office of the Income Tax Unit of the Treasury Department and the Comptroller General have interpreted the Treasury decision contrary to the petitioner's contention herein.

Petitioner, however, suggests that rulings of the Income Tax Unit have not the force of a Treasury decision, and further that after the date of I. T. 3275, above mentioned, the Treasury Department promulgated Treasury Decision 4906, C. B. 1939-2, p. 404 (408), stating that Treasury Decision 4723 should remain in full force and effect with respect to contracts completed prior to the taxable year which we have here before us. Such statement, however, does not change the language of T. D. 4723. On the contrary, it appears reasonable that in promulgating Treasury Decision 4906, after the issuance of I. T. 3275, with its definition of completion of contract and reference to Treasury Decision 4723, the Treasury Department intended to apply that meaning to Treasury Decision 4723 for the previous years affected (including the year herein involved). Treasury Decision 4906 omits the exception in Treasury Decision 4723, above quoted, and appears to bring administrative construction into line with the view of the Comptroller General and of this Court. This of course is interpretation of the phrase later than the year which we have before us here and much later than the date of the contract involved, yet it tends to bear out respondent's asseveration that at no time has the Treasury Depart-

ment considered the contractual definition to control over that laid down in Treasury Decision 4723; and there is in the record before us no evidence to the contrary. In short, the petitioner bases its position upon the mere language of Treasury Decision 4723, as if it were altogether unambiguous and provided a positive statement of the Treasury Department's position. We find that Treasury decision to be indefinite with respect to the point here at hand, in cases where contracts provided a definition of completion of the contract different from that adopted in the Treasury decision. Considering the position taken by the respondent herein, that in fact the Treasury Department did not adopt contractual definitions of completion of contract, it is apparent that the petitioner, with the burden on this question, has not sustained it as a matter of proof of fact, and we therefore may not give the Treasury decision the effect of executive construction for which the petitioner contends.

Moreover, if in fact the Treasury Department did intend to interpret the statute as covering any contractual definition given to the expression completion of the contract, in our opinion it was an unauthorized redelegation of delegated power. In general, legislative power may not be delegated to private persons. 12 C. J. 842. To the extent that the regulation is relied on as interpreting the statutory expression to be as defined by the contract, it is, so far as the contractor is concerned, delegation of any power the Commissioner may have to interpret, to a private person or corporation, or other entity.

We find helpful analogy on the question as to completion of the contract here involved in decisions involving the "Heard Act" of August 13, 1894, amended February 24, 1905 (40 U. S. C. A. § 270.) That act provided, *inter alia*, with reference to contracts with the United States for the construction or repair of public buildings or works, that if the United States had not brought suit on the contractor's bond within six months "from the completion and final settlement of said contract" a creditor supplying labor or materials could bring a suit, not to be commenced until "after the complete performance of said contract and final settlement thereof and shall be commenced within one year after the performance and final settlement of said contract and not later." In *Illinois Surety Co.* v. *Peeler*, 240 U. S. 214, the Supreme Court, construing that act, held that final settlement is not when final payment is made, but prior thereto, final settlement being final administrative determination by the proper authority of the amount due. To the same effect are *Globe Indemnity* v. *United States*, 291 U. S. 476, and *National Surety Corporation* v. *Reynolds*, 87 Fed. (2d) 865. In *United States* v. *Arthur Storm Co.*, 101 Fed. (2d) 524; certiorari denied, 307 U. S. 630, it was held that final settlement is not synonymous with final payment, but precedes payment and denotes proper administra-

tive determination with respect to the amount due. In *Christman Co.* v. *Michigan Gypsum Co.*, 85 Fed. (2d) 474, the conclusion is the same, the court defining final settlement as "administrative determination of the amount due upon completion of the contract"—which language serves to emphasize the fact that these cases assume that the contract was completed upon the completion of the work involved. Further emphasis for that view is found in *United States* v. *Illinois Surety Co.*, 226 Fed. 653 (662); aff'd., 244 U. S. 376. The court says that the true intent and purpose of the statute are to give legal redress after "the public work itself shall have been completed and accounts therefor adjusted"; also, that " 'settlement thereof' does not mean 'payment therefor.' " In *Illinois Surety Co.* v. *United States*, 215 Fed. 334 (338), the court uses the expression "the contract had been performed, the work accepted, the balance ascertained  *  *  *," from which it is clear that completion of the contract was considered completion of the work involved. In *United States* v. *Winkler*, 162 Fed. 397 (401), we read:

> The statute quoted seems to contemplate that in all cases the United States having entered on the work and made a contract for its execution will see that the work is completed; that, when the United States is compelled to complete the work by reason of the failure of the contractor for any reason so to do, this is "the complete performance of said contract."  *  *  *

We can see no legal differentiation between performance of the contract and completion thereof. In *United States* v. *Illinois Surety Co.*; 226 Fed. 653 (662), *supra*, it is held that a contract may be "finally settled even though payment of part of the balance found due on the accounting was to be withheld for a year as security for a guaranty of the work and the covenant to keep it in repair." This indicates well the finality of contract before payment in the instant case. In *United States* v. *Hampton Roads Shipbuilding Corporation*, 72 Fed. (2d) 943, it is said, "There can be no 'completion' of the last named contract until the vessel is completed in accordance with the terms thereof."

We have above referred to analogy found in the above cases, all involving the Heard Act. In fact, however, there appears to be more than analogy; for the Heard Act applies to the construction of a vessel, *Title Guaranty & Trust Co.* v. *Crane Co.*, 219 U. S. 24; and to contracts where title passes to the United States as fast as the subject matter is completed, *United States* v. *Ansonia Brass & Copper Co.*, 218 U. S. 452, also involving construction of vessels, as does *United States* v. *Hampton Roads Shipbuilding Corporation*, *supra*. The statute covers labor and materials furnished the Government. *United States* v. *American Surety Co.*, 200 U. S. 197. It therefore appears to apply to the instant case. The Vinson Act, of course,

in effect, involves only the element of limitation of profit, and appears not to preclude application of the more general provisions of the Heard Act, including the above expressions therefrom, with the construction thereof in the cases above.

It is apparent that the cases contemplate three steps, to wit, completion of the work as completion of contract, final settlement, and thereafter payment. If final settlement precedes payment, completion of the contract logically does likewise, and, since the Heard Act reads "completion * * * of said contract," and later "complete performance of said contract and final settlement thereof," it is clear that completion or performance of the contract there means completion of the work, to perform which the contract was let. It does not mean payment. After the long history of the Heard Act, involving contracts with the United States as to construction of public works, we do not think the Vinson Act for the construction of naval vessels was intended to define or permit definition of completion of contract differently.

2. What we have said above, in effect, also disposes of the question of estoppel urged by the petitioner. That the sovereign may be estopped under unusual circumstances is settled law, but it is equally settled that such circumstances must be extraordinary and particularly that in matters of taxation estoppel should be sparingly applied. *James Couzens*, 11 B. T. A. 1040. The petitioner's contention is that it relied upon Treasury Decision 4723. In fact, it relied rather upon its interpretation of that Treasury decision. The Treasury decision, however, as is apparent upon its face, constituted no plain positive and unequivocal statement of fact, such as might have been sound basis for estoppel, but was rather an ambiguous expression as to the meaning of which the parties here are now in dispute, the respondent contending that it was never interpreted by the Treasury Department as the petitioner interprets it. Where both parties to a matter have equal knowledge, estoppel as a general rule does not apply. Here, both parties were free to interpret the regulation, and apparently did interpret it differently. No evidence in the record before us shows agreement by the Treasury Department with the petitioner's understanding of the regulation, and I. T. 3275, above discussed, tends at least to indicate a contrary view by that department. A taxpayer's reliance upon an erroneous regulation does not estop the Government. *Goldfield Consolidated Mines Co.* v. *Scott*, 247 U. S. 126. In *Tide Water Oil Co.*, 29 B. T. A. 1208, we held not only that an expression of opinion on the law may not be basis for estoppel, but that the Commissioner "could not fairly rely upon the taxpayer's interpretation"— which not only indicates lack of proper basis for estoppel herein, but that the Commissioner might not leave interpretation of a statute

to the taxpayer, as the petitioner contends was done in this matter by Treasury Decision 4723. We conclude that proper basis for estoppel is not to be found in the Treasury decision, nor in petitioner's reliance upon its interpretation thereof. Moreover, we find the petitioner's contention that it suffered by relying upon the Treasury decision and expediting delivery in 1938 upon another contract to be speculative in its nature. We think that the evidence does not, in fact, prove that petitioner would have been financially better off if it had completed the other contract in 1939. We are not convinced by the conclusions of the witness on the point. The fact is that the other contract was not completed in 1939, and we think we can only conjecture the financial results had it been completed in that year. There might have been different costs of material actually delivered or of labor in 1939, such as materially to change the financial result from what it was in 1938. The petitioner asked, and we have made, a finding that it did not know (about September 29, 1938) whether it would have excess profits on contracts which would be completed in 1939. We think it likewise could not be definite as to the one 1937 contract. We hold that estoppel has not been shown.

3. The petitioner contends, however, that as a matter of fact, and regardless of the above considerations of law, interpretation, or estoppel, the contract was completed in 1938, because of the fact that it contained a guaranty that equipment furnished would give satis· factory service performance for two years after installation, and because pursuant to such guaranty the petitioner in April 1938 delivered to the Navy Department, without further payment, two control valve bodies, costing $429.38, to replace defective control valve bodies previously delivered prior to 1938. This element was not present in *Douglas Aircraft Co., supra,* nor in *Foster Wheeler Corporation, supra.* Is the guaranty provision, which was contained in the body of the general contract, to be considered as a part of that contract and action thereunder a part of completion of the general contract? In fact, in our view, the term "guaranty" is improperly used, for the promise involved was made by the contractor himself, and not by an independent guarantor. The situation really presents a promise or agreement by the contractor to warrant or to maintain. In compliance with that agreement the contractor replaced certain equipment originally furnished. In doing so, did the petitioner complete its contract as alternatively contended by it?

As a general rule, a warranty is collateral to the main purpose of a contract and is not an essential part of it. 13 C. J. 567. In our opinion, the clause of "guaranty" or warranty here involved is not soundly to be considered an essential part of the principal contract. The enacting clause of the Vinson Act of 1934 shows that it was an

act, *inter alia,* "to authorize the construction of certain naval vessels" and section 3, the portion here of interest, directs the Secretary of the Navy to submit estimates "for the construction of the foregoing vessels, etc." Furthermore, the provision as to the contract is "That no contract shall be made by the Secretary of the Navy for the construction and/or manufacture of any complete naval vessel, etc." Thus it appears that the intent of the act and the contract is the construction and manufacture of a naval vessel or portion thereof. The statute nowhere requires a clause of guaranty or warranty. It does use the expressions "completion of the contract" and "completed." We see then that a contract contemplated by the statute could, so far as that statute is concerned, have been executed and completed without the presence of, or any effect from, a clause of guaranty or warranty. It has been held that a construction contract is completed although some part of the construction work is intended to be replaced; *O'Neal* v. *King,* 48 N. C. 517; likewise, that where a materialman's lien is required to be filed within a limited time from the date upon which material was last furnished under the contract, that the substitution of certain material in place of that formerly furnished did not operate to extend the time for filing lien. *Taylor Brothers* v. *Gill,* 259 Pac. 236; and cases cited. In *Nelson* v. *San Antonio Traction Co.,* 175 S. W. 434, a guaranty to keep paving in repair for a ten-year period was considered not a part of the contract to lay the paving. We think that here an action might have been based upon the principal contract, such as for breach thereof, independent of and prior to the expiration of the two-year period during which the contractor "guarantees" that equipment will give satisfactory service performance; and that statutes of limitation with reference to the principal contract might have run upon the completion and delivery of the subject matter and would not be tolled merely because there was a two-year guaranty-of-satisfactory-service clause; whereas statutes of limitation on an action for failure to comply with the agreement for satisfactory service performance for two years would rather obviously begin to run not from the delivery and acceptance of materials, but from the failure to give satisfactory service performance.

The petitioner, upon this point, stresses that delivery, as a test of completion of a contract, "must mean delivery and acceptance," and that therefore delivery of material not conforming to specifications and which petitioner was required to replace and did replace "could not have been accepted and cannot be taken into account in determining when the work of the contract was completed by the contractor." However, we note that the contract provides, in article 8, that the contractor shall be paid "for articles delivered and accepted * * *," also for "accepted partial deliveries." Since, in

fact, the petitioner was, prior to 1938, paid the entire contract price of $354,531.39, save and except $17,935.92 withheld for liquidated damages and $1,000 representing an error, it is apparent that the petitioner and the Government at that time considered all materials "accepted." We conclude that the materials covered by the construction contract were delivered and accepted prior to 1938, and that the collateral promise or warranty involved in the expression "contract or guaranty, etc.," does not serve to make the contract complete when in 1938 certain parts were replaced. Moreover, even if the "guaranty clause" were considered effectual to affect the date of completion of contract, on the record before us it would not aid the petitioner; for that clause is that for two years from installation the equipment will "give satisfactory service performance." The last material, except for the replacements, was delivered by May 28, 1937. Until about May 27, 1939, therefore, petitioner had a duty of furnishing "satisfactory service performance" on at least some equipment. The petitioner seems to assume that because, after the replacements in April 1938, no other deliveries were made, the contract involved in the guaranty clause was completed in 1938. But reading that clause discloses that it is not limited to replacements, but to "satisfactory service performance." It may well be that repairing, supervision, or other work, short of actuaul replacement, was continued until the year 1939. Obviously such items might have been a part of performance of the guaranty contract. If performance was so continuued, then under the petitioner's own theory of giving effect to the guaranty clause, completion would be in 1939. Without further evidence on what was in fact done under the guaranty clause, we may not give it effect even on petitioner's theory. We hold that the contract of 1935 is not shown completed in 1938, within the meaning of the Vinson Act.

*Decision will be entered for the respondent.*